CANADA COMMUNITY IMPROVE-
MENT SOCIETY, INC., et
al., Plaintiffs,

v.

CITY OF MICHIGAN CITY, INDIANA,
et al., Defendants.

No. S87–325.

United States District Court,
N.D. Indiana,
South Bend Division.

July 24, 1990.

Ivan E. Bodensteiner, Robert F. Blomquist, Valparaiso, Ind., for plaintiffs.

Martin W. Kus, LaPorte, Ind., for City of Michigan City, Ind., and Michigan City Port Authority.

Roger J. Marzulla, Charles J. Sheehan, U.S. Dept. of Justice, Land & Natural Resources Div., Kaye A. Allison, U.S. Dept. of Justice, Environmental Defense Section, Washington, D.C., Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., for John O. Marsh, Jr.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This is a citizens' suit under the Clean Water Act, 33 U.S.C. § 1365, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4347, against the Secretary of the Army, the City of Michigan City, Indiana, and the Michigan City Port Authority concerning the dredging of Trail Creek and the storage of the dredged material in a contained disposal facility in Michigan City. Four dispositive motions pend in this case: (1) the Secretary's motion for partial dismissal and for summary judgment; (2) the Michigan City defendants' motion for summary judgment; (3) the plaintiffs' cross motion for partial summary judgment; and (4) the Secretary's recent motion to dismiss for lack of subject matter jurisdiction, filed July 12, 1990.

Plaintiffs Canada Community Improvement Society, Inc. and the LaPorte County Environmental Association jointly challenge the decision of the Secretary, acting through the Corps of Engineers, to engage in a dredging project at Trail Creek in Michigan City, Indiana. The plaintiffs charge Michigan City and its Port Authority with violation of the "no discharge" prohibitions contained in the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a), for the discharge of pollutants into United States waters without permits issued under 33 U.S.C. §§ 1342 and 1344. The plaintiffs' amended complaint further charges the Secretary with violation of NEPA and the Corps' regulations implementing NEPA, 33 C.F.R. § 230.11(b), in failing to prepare a Supplemental Environmental Impact Statement ("SEIS") for the dredging of Trail Creek before the second dredging. The plaintiffs seek declaratory and injunctive relief along with civil penalties against the defendants.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Hannon v. Turnage,* 892 F.2d 653, 656 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Whetstine v. Gates Rubber Co.,* 895 F.2d 388, 392 (7th Cir.1990). If he fails to do so, summary judgment is proper. *National Diamond Syndicate, Inc. v. UPS,* 897 F.2d 253, 260 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Santiago v. Lane,*

894 F.2d 218, 221 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sims v. Mulcahy,* 902 F.2d 524, 540 (7th Cir.1990).

The parties cannot rest on mere allegations in the pleadings, *Koclanakis v. Merrimack Mut. Fire Ins. Co.,* 899 F.2d 673, 675 (7th Cir.1990); *Puckett v. Soo Line R.R. Co.,* 897 F.2d 1423, 1425–1426 (7th Cir.1990), or upon conclusory allegations in affidavits. *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989). The court must draw any permissible inferences from the materials before it in favor of the nonmoving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989), as long as the inferences are reasonable. *Spring v. Sheboygan Area School District,* 865 F.2d 883, 886 (7th Cir.1989); *Mays v. Chicago Sun–Times,* 865 F.2d 134, 136 (7th Cir.1989). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

For the reasons that follow, the court concludes that under these standards, the defendants have demonstrated the absence of any material factual issue and entitlement to judgment as a matter of law on each of the plaintiffs' claims. Accordingly, the court grants the defendants' summary judgment motions.

### I.

In 1976 and 1977, the Chicago District of the U.S. Army Corps of Engineers began planning for a ten-year harbor dredging project at the Michigan City harbor. Plans were made to dredge the harbor and to dredge Trail Creek to allow commercial and recreational craft further access upstream and to prevent the continued silting of Trail Creek. The EPA classified the material that was to be taken from Trail Creek as unsuitable for unrestricted or open-lake disposal. Accordingly, in January, 1978, the city and the Corps entered into a local cooperation agreement, 33 U.S.C. § 1293(a), for the construction of a contained disposal facility ("CDF") into which the dredged material would be deposited. The EPA found that applicable water standards would not be violated.

Also in 1978, the Corps issued its Final Environmental Impact Statement ("FEIS") after circulating a draft environmental impact statement among interested federal and state agencies, including the Environmental Protection Agency and the U.S. Fish and Wildlife Service, and soliciting public comment. The FEIS estimated that the dredging project would involve ten years (with two maintenance dredgings at approximately five year intervals) and the removal of approximately 50,000 cubic yards of sediment. The FEIS predicted that the removal of pollutants from Trail Creek would enhance water quality. The Corps, which is responsible for issuing permits for discharge of dredged or fill material into United States waters, did not issue a permit either to itself or to the city, but complied with its own regulations concerning Corps dredging projects.

The Corps completed the project's first phase, involving the removal of about 25,-000 cubic yards of sediment, in July, 1979. From July, 1978 through March, 1979, the Corps monitored the Trail Creek soil sediments. "Dredged spoil" from Trail Creek was placed in the CDF by means of an hydraulic dredge connected by a pipeline to the CDF. A sand filter contained in a dike adjacent to Trail Creek was to filter the sediment so that only water and a small amount of suspended solids containing sediments were to be discharged from the CDF into Trail Creek. During disposal operations, however, the sand filter and discharge pipes clogged, producing a "bathtub" effect.

The city did not actively involve itself in the dredging, although it assisted the Corps in coordinating the removal of the dredged material to the CDF. The city furnished the land, easements, and rights-of-way necessary for the CDF's construction, operation, and maintenance, and

agreed to operate the facility in a manner satisfactory to the Corps after the CDF's completion.

In December, 1985, in anticipation of completing the project, the Corps procured further sediment sampling tests of Trail Creek by a Peoria, Illinois engineering firm. Those tests disclosed some polluted and heavily polluted sediment, but indicated that Trail Creek was cleaner in 1985 than it had been in 1978. The Corps modified its dredging operation for the completion of the project: a mechanical dredge with a closed-bucket clamshell was selected to remove the dredged material, which then was to be transported by barge to a rehandling site, where the material was to be placed in watertight trucks[1] for transport to the CDF. A small de-watering structure at the CDF was designed to collect any water contained in the sediment and send it by pipe to the Michigan City sanitary district. Water monitoring was expanded in the second phase.

The Corps prepared no supplemental environment impact statement before embarking on the 1987 phase of the project.

## II.

The Secretary has moved for dismissal under 12(b)(1) or in the alternative for summary judgment on the CWA claims brought by the plaintiffs and for summary judgment, alleging no issue of material fact on the NEPA claim. The Secretary argues, last but jurisdictionally, that all claims against him are moot because the project has been completed (rendering moot the demand for a SEIS) and because the CDF will be turned over to Michigan City in the near future. Because the Secretary retains control over the CDF, the court declines to find the CWA claims moot; the mootness issue with respect to the NEPA claim will be discussed below.

## A.

As to the CWA claims, the Secretary argues (1) the plaintiffs failed to comply with the notice requirements of the CWA,

barring suit; (2) § 402 of the CWA does not apply to this "dredge and fill" project; and (3) § 404 the Army Corps of Engineers need not issue itself a permit under § 404 of the CWA, but need only comply with its own regulations, which provide a substantial equivalent of the permitting procedure, and that the Corps complied with those regulations concerning the Trail Creek project. The court finds the first argument persuasive, and so need not reach the next two points to resolve the CWA claims against the Secretary.

■ The Secretary contends that the court lacks subject matter jurisdiction over the CWA claims since the plaintiffs failed to give the government the required notice of their intent to sue as required under statutory law. Section 505 of the CWA, 33 U.S.C. § 1365, requires at least sixty days notice to the administrator, the state, and the alleged violator before a citizens' suit may be filed. That provision allows the administrator to determine the manner in which such notice shall be given. EPA regulations require such notice to be given by either certified mail or by personal service on the head of the agency.

Notice of this action was made by certified mail to the municipal defendants (addressed to the city clerk of Michigan City and the president of the board of directors of the Michigan City Port Authority) and copies were sent to various officials of the State of Indiana, the Regional Administrator of the EPA, and the Chicago District of the U.S. Corps of Army Engineers, among many others. The Secretary claims not only that the Corps did not receive notice in the prescribed manner, but that the notices provided failed to set forth each violation alleged, notably excluding those under §§ 402 and 404 of the CWA. Claiming that the courts have strictly applied these notice requirements to citizens' actions, *Hallstrom v. Tillamook County*, — U.S. —, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), the Secretary asserts that dismissal of the CWA action is warranted.

---

**1.** The record contains evidence that at least some of the trucks leaked. Any factual dispute

over this issue is, however, immaterial to the motions now before the court.

The plaintiffs concede that their notice failed to satisfy the regulation's precise requirements, but contend that the notice was timely and sufficed to give "notice in fact". The Secretary responds that the Supreme Court's decision in *Hallstrom* sounded the death knell for the "notice in fact" theory upon which many courts (including this one) have relied. The plaintiffs, in turn, argue that *Hallstrom* addressed only the requisite timing of notice, rather than the requisite form or content of notice.

The court need not determine whether, as the Secretary argues, the "notice in fact" doctrine has been laid to rest by *Hallstrom*. The notice sent to the Secretary, although sent in a timely manner, did not suffice to provide the Secretary with the sort of notice that would constitute "notice in fact". While the Secretary's (or, more accurately, the Corps' Chicago district's) copy of the notice to Michigan City contained some reference to the Clean Water Act, it cannot be viewed as informing anyone that the plaintiffs believed the Corps was violating §§ 402 or 404 of the Clean Water Act.

In *Fishel v. Westinghouse Electric Corp.*, 617 F.Supp. 1531 (M.D.Pa.1985), the court found sufficient notice in fact despite the notice's failure to specify the regulations allegedly violated, the persons responsible for the violation or the dates of the violations. The notice in the case at bar suffered from the first two defects, as well. The *Fishel* plaintiffs were able to show, however, that the EPA and the state agency had been investigating the alleged violations for several months before notice was given, however. No similar showing has been made here.

The court recognizes that the notice in this case was prepared by members of a citizens group, rather than by a trained lawyer, and knowledge that one must serve the Secretary of the Army to complain about a local dredging project is not intuitive. Nonetheless, the *Hallstrom* Court rejected the argument that environmental claims (or at least claims under the Resource Conservation and Recovery Act) should be viewed with the solicitude afforded to *pro se* employment discrimination plaintiffs. No principled distinction can be found between the RCRA claimant and the CWA claimant: both types of environmental plaintiffs face, not a race that may be lost before counsel is found, but the task of waiting for possible post-notice, pre-filing administrative resolution. For lack of sufficient notice then, plaintiffs' CWA claims against the Corps must fail at the summary judgment stage.

B.

■ In response to the NEPA claim, the Secretary argues first that the case is moot, because he is about to turn the CDF over to Michigan City. The court cannot agree. The Secretary operates the CDF today; after the turnover, the Secretary will continue to monitor the city's operation of the CDF. It is not absolutely clear that the allegedly wrongful conduct could not recur. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66, 108 S.Ct. 376, 386, 98 L.Ed.2d 306 (1987). The case is not moot.

■ On the merits of the plaintiffs' NEPA claim, the Secretary contends that the facts in this case did not evidence a "seriously different picture" from the time of filing of the Final Environmental Impact Statement in January, 1978 warranting the preparation of a Supplemental Environmental Impact Statement. He contends essentially that the decision whether to prepare a SEIS is left to the administrative agency (here, the Corps), that courts owe great deference to such agency decisions, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989), and that such decisions are not to be overturned by a court unless shown to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989).

The Secretary maintains that the changes in the dredging activity at Trail Creek since the FEIS were all designed to mitigate adverse environmental effects; as

**1030**

such, the changes did not warrant a new assessment of environmental impact since that impact undoubtedly would fall below that previously determined. Evaluations by both the Corps and the EPA regional office indicated that there was no need to prepare a SEIS between the first and second dredging activities.

In response, the plaintiffs contend that the appropriate inquiry is whether "the agency took a hard look at the environmental factors implicated and based its decision on a rational consideration of the relevant factors". *Van Abbema v. Fornell*, 807 F.2d 633, 636 (7th Cir.1986). The plaintiffs argue that an SEIS was warranted in light of various events, in addition to the Corps' own changes to the project, particularly the "bathtub effect" noted within the CDF and the designation of the nearby Waste, Inc. land as a Superfund site. The plaintiffs deny that the post-FEIS changes in the dredging project at Trail Creek were all mitigating, but further argue that a SEIS was necessary nonetheless. The plaintiffs also ask for the preparation of such a supplemental report as part of their relief in this action.

The record before the court discloses that between the first dredging and second dredging, the Corps made plans to modify the dredging method so as to employ a mechanical dredge with a closed-bucket clamshell, contracted for a bottom sediment sampling of Trail Creek, modified the method of transporting the dredged material, designed a small de-watering structure at the CDF to collect water contained in the sediment and transport it to the Michigan City sanitary district, and undertook a water monitoring plan that involved reports to local, state, and federal agencies. Indeed, the EPA considered whether a supplemental statement should be prepared and decided that no SEIS was needed.[2]

In light of the foregoing, no reasonable trier of fact could fail to find that this constituted the "hard look" of which the Seventh Circuit spoke in *Van Abbema v. Fornell*, 807 F.2d at 636, or that the Secretary's decision to proceed without an SEIS was not arbitrary and capricious, *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377, giving appropriate deference to the Secretary. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351. Summary judgment in favor of the Corps on the NEPA is, therefore, appropriate.

### III.

The plaintiffs contend that the Michigan City defendants are violating §§ 402 and 404 of the CWA.

### A.

■ Section 402 of the Act, 33 U.S.C. § 1342, has no application to the events involved here, for § 404 alone applies to "dredge and fill" operations. The plaintiffs argue that adequate environmental safeguards are absent unless §§ 402 and 404 each apply, but that argument must be directed to Congress. "[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Com'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 402(a)(1) provides for the issuance of permits under that section, "Except as provided in sections 1328 and 1344 of this title ..." Further,

2. William D. Franz, chief of the EPA's Region V environmental review branch, planning and management division, states in ¶ 4 of his affidavit:

In February 1987 when the Corps advised us that they would be performing maintenance dredging of Trail Creek we made an internal review to determine whether or not we should request that the Corps of Engineers prepare a supplemental EIS. We determined that the maintenance dredging was covered by the 1978 EIS since the dredging was an ongoing project. Furthermore, the sediments were similar to the materials previously dredged and they would be placed in the existing confined disposal facility. Based upon these and the fact that the State had waived the 401 Clean Water Act certification we determined that we would not request the Army Corps of Engineers to prepare a supplement to the Final Environmental Impact Statement.

... considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations "has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.

*Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694 (1984). With this principle in mind, the court notes that the Environmental Protection Agency's regulations, 33 C.F.R. § 122.3(b), provide:

The following discharges do not require NPDES [§ 402] permits:

\*     \*     \*     \*     \*     \*

(b) Discharges of dredged or fill material into waters of the United States which are regulated under Section 404 of CWA.

Both the statute and the regulations explicitly differentiate between activities subject to § 402 and § 404. Regardless of the persuasiveness of the plaintiffs' arguments that dual permits should be required in this instance, the plain language of federal regulations and statutes, and not such policy choices, must govern this court and its determinations. Accordingly, the court concludes that the Michigan City defendants are entitled to judgment as a matter of law on the plaintiffs' claims under § 402 of the CWA.

### B.

■ The plaintiffs have come forth with no evidence establishing a violation of § 404 by the Michigan City defendants. The record contains no evidence that these defendants have dredged Trail Creek, placed the dredged materials into the CDF, transported the dredged materials in leaking trucks through residential areas, or operated the CDF. These things, if done at all, have been done by the Corps. The hour of municipal control over the CDF may be near, and it may be true that the city must acquire a § 404 permit before it may maintain the CDF. The record before the court does not, however, allow an inference that the Michigan City defendants will take over the maintenance of the CDF without a § 404 permit or will allow discharges that would bring § 404 into play.

### C.

Accordingly, the Michigan City defendants are entitled to judgment as a matter of law on the § 404 claim against them.

### IV.

Based on the foregoing, the court concludes that, although the action is not moot and the Secretary's dismissal motion of July 16 accordingly must be DENIED, the defendants' summary judgment motions should be, and the motions hereby are, GRANTED. Because the defendants are entitled to judgment as a matter of law, the plaintiffs' motion for partial summary judgment must be, and hereby is, DENIED.

SO ORDERED.