**COEUR D'ALENE LAKE; Kootenai Environmental Alliance, Inc., Committee to Save Our Shores and Our Skyline, Inc., Carol Stacey and Art Manley, Plaintiffs,**

v.

**Kermit V. KIEBERT, Director, Idaho Transportation Department, Idaho Transportation Department, Samuel K. Skinner, United States Secretary of Transportation, Federal Highway Administration, Lt. Col. James A. Walter, District Engineer of the United States Army Corps of Engineers, United States Army Corps of Engineers, Defendants.**

Civ. No. 90–0392–N–HLR.

United States District Court, D. Idaho.

April 23, 1992.

this action or to the issues being considered by these motions.

Scott W. Reed, Anne Solomon, Flammia & Solomon, Coeur d'Alene, Idaho, for plaintiffs.

Robert L. Trabert, Chief Legal Counsel, Patrick W. Fanning, Steven M. Parry, George M. Parham, Idaho Transp. Dept., Boise, Idaho, for defendant Idaho Transp. Dept.

Maurice O. Ellsworth, U.S. Atty., D. Idaho, D. Marc Haws, Asst. U.S. Atty., Boise, Idaho, for defendants Samuel K. Skinner, Secretary of Transp., Federal Hwy. Admin., Lt. Col. James A. Walter, and U.S. Army Corps of Engineers.

## ORDER GRANTING MOTION TO AMEND COMPLAINT AND ADDRESSING MOTIONS FOR SUMMARY JUDGMENT

RYAN, Chief Judge.

### I. PROCEDURE

Now pending before the court are a number of dispositive and procedural motions. The federal government filed a Motion for Summary Judgment on September 9, 1991, on behalf of the Federal Highway Administration ("FHwA"); Samuel K. Skinner, Secretary of Transportation; the United States Army Corps of Engineers ("Corps"); and James A. Walker, District Engineer of the Corps. The plaintiffs filed a Motion for Partial Summary Judgment on November 15, 1991. The state defendants, Kermit V. Kiebert and the Idaho Transportation Department (hereinafter collectively referred to as "ITD"), also filed a Motion for Summary Judgment on November 15, 1991. These three motions have been fully briefed and are now ripe for decision. In addition, the court heard oral argument on these motions on April 9, 1992.

Other motions now pending before the court include the plaintiffs' Motion to Amend Complaint filed on September 13, 1991. The federal government initially objected to this motion, while ITD notified the court that it had no objection. At the hearing on April 9, 1992, the federal government indicated that it no longer had any objections to the Motion to Amend, and agreed that the plaintiffs should be allowed to file their Amended Complaint. Therefore, the motion shall be granted and the Amended Complaint shall be filed as of the date of this order. The court will address the motions for summary judgment based upon the claims contained in the Amended Complaint.

Also before the court is ITD's Motion to Dismiss Pendent State Law Claims, filed on November 15, 1991, asking the court to

dismiss the plaintiffs' two pendent state claims against ITD. The plaintiffs did not specifically respond to this motion until March 17, 1992, when they filed an Ex Parte Motion for an Extension of Time to File Notice of Opposition to State's Motion to Dismiss Pendent State Claims. The court has reviewed the plaintiffs' ex parte motion and finds that it should be granted. In addition, based on the discussion below, the court has determined that ITD's Motion to Dismiss Pendent State Law Claims should be granted.

At the start of the hearing on April 9, 1992, the court identified certain issues, claims, and remedies which are either moot or which the plaintiffs have dropped in the Amended Complaint. All parties then agreed that the following are either moot or have been dropped from the suit:

1. *Stanley F. Hamilton and the Idaho Department of Lands:* Pursuant to a stipulation submitted by the parties, these two defendants were dismissed from the suit on February 5, 1991.

2. *Scarsella Brothers:* Based on a stipulation submitted on August 29, 1991, the contractor, Scarsella Brothers, Inc., was dismissed from the suit.

3. *National Environmental Policy Act ("NEPA"):* In the Amended Complaint, the plaintiffs have dropped their claims based on violation of NEPA, except as incorporated with their claim of "wrongful issuance" of the Section 404 permit under the Clean Water Act, 33 U.S.C. § 1251, *et seq.*

4. *Violation of the Idaho Lake Protection Act:* This pendent state claim has also been dropped by the plaintiffs in their Amended Complaint.

5. *Violation of Idaho Water Quality Standards:* At the hearing, the plaintiffs conceded that this pendent state claim should be dismissed. The Idaho Department of Health and Welfare, Division of Environmental Quality ("DEQ") brought an administrative action against ITD for violations of Idaho Water Quality Standards. This administrative action has concluded and a Consent Order was signed on December 31, 1991. Therefore, the court agrees that this pendent claim should be dismissed.

6. *Removing the fill and equipment and restoring the embankment to its natural condition:* All parties and the experts on both sides agree that removing the fill and equipment from the lake would cause far more harm than leaving the fill as it is now. In addition, the embankment *cannot* be restored to its *natural* condition, because the embankment where the fill was placed is actually a highway fill done in the 1950s. Therefore, this remedy requested by the plaintiffs is moot.

7. *Eliminate the full interchange from the highway design:* The plaintiffs agree that this remedy is moot because the full interchange has already been dropped from the highway plan.

8. *Stop the fill operation:* All parties agree that the project has been halted, and that all work necessary to ensure highway safety and provide suitable Kokanee spawning grounds at the fill site has been completed.

9. *All claims for injunctive relief:* The plaintiffs agree that all of the administrative decisions at issue in this action were made long ago, and that all work on the project has either been completed or abandoned. Therefore, all claims for injunctive relief are now moot, and any claims based upon the Administrative Procedures Act ("APA") are moot because under the APA the only relief available is injunctive relief. *See* 5 U.S.C. § 702.

## II. ANALYSIS

The factual background of this case is set forth in detail in the memoranda, supporting affidavits, and exhibits submitted in relation to the motions for summary judgment. Therefore, the court will discuss the facts only as necessary to the analysis of the pending motions for summary judgment.

### A. *The Summary Judgment Standard*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S.C.S. Court Rules, Federal Rules of Civil Procedure, Rule 56(c) (Law.Co-op. 1987).

■ The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.[1]

■ Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be *both* "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (*quoting First Nat'l Bank v. Cities Serv. Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

### B. *Preliminary Issues*

1. Standing.

The plaintiffs seek judicial review of the decision of the Corps to issue the Section 404 permit under the Clean Water Act to ITD, as well as the actions of FHwA with respect to the project at issue. All of the defendants have argued that the plaintiffs lack standing to challenge the actions of the various agencies named in this suit.

■ The issue of standing in federal courts is first considered within the framework of Article III of the United States Constitution, which restricts judicial power to "cases" and "controversies." To satisfy standing under the case or controversy requirement, the plaintiffs must show "(1) an actual threatened injury (2) traceable to the defendant's allegedly illegal conduct (3) which is likely to be redressed by the requested relief." *National Wildlife Fed'n v. Burford,* 871 F.2d 849, 852 (9th Cir.1989) (citations omitted). In the case at hand, the minimum standing requirements of Ar-

---

1. *See also* Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
U.S.C.S. Court Rules, Rules of Civil Procedure, Rule 56(e) (Law.Co-op.1987 & Supp.1991).

ticle III must be met, as well as the particular standing requirements under the APA.

■ The APA provides a right of judicial review to persons who have suffered a legal wrong because of the action of a federal agency, or persons who are "adversely affected or aggrieved by agency action *within the meaning of a relevant statute....*" 5 U.S.C.S. § 702 (Law.Co-op.1989) (emphasis added)[2]. The relevant statute in this case is the Clean Water Act.

■ In analyzing standing under the APA, the first question to be asked is whether "the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." *Data Processing Serv., Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Then the analysis turns to whether the interest sought to be protected by the plaintiffs is within the zone of interests to be protected or regulated by the statute in question. *Id.* at 153, 90 S.Ct. at 829. Such interests can include aesthetic, conservational, and recreational values. *Id. See also Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). And finally, the plaintiffs' injury must be such that it may be redressed by the court. *Benally v. Hodel*, 940 F.2d 1194, 1198 (9th Cir.1990).

■ The plaintiffs' injury "cannot be a general or amorphous harm but must be particular, distinct and concrete." *National Wildlife Fed'n v. Burford*, 871 F.2d at 852 (citation omitted). In addition, the plaintiffs' proof of injury must be specific. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Therefore, in order for the plaintiffs to survive the motions for summary judgment for lack of standing, they must allege *specific* facts which show that they have suffered "injury in fact," and that the interests they seek to have protected fall within

the "zone of interests" sought to be protected or regulated by the provisions of the Clean Water Act which they allege have been violated.

Another standing issue which should also be addressed is the right of environmental organizations to sue on behalf of their members.

> [A]s a general rule, "an organization whose members are injured may represent those members in a proceeding for judicial review." ... More specifically, an association has standing on behalf of its members when (a) its members have standing in their own right; (b) the interests the association seeks to protect are germane to the organization's interests; and (c) the asserted claim or requested relief do [does] not entail the need for individual members to participate.

*National Wildlife Fed'n v. Burford*, 871 F.2d at 852 (citations omitted).

■ The affidavits of the plaintiffs submitted in an effort to establish standing set forth specific facts about residency in the Coeur d'Alene area, use and enjoyment of the lake, and alleged injury in fact caused by the actions of the defendants. In addition, the record reflects that the environmental groups, Kootenai Environmental Alliance, Inc. ("KEA"), and the Committee to Save Our Shores and Our Skyline, Inc. ("SOS"), are local environmental groups formed to protect Coeur d'Alene Lake and surrounding areas.

After careful review of the affidavits submitted by the plaintiffs, as well as other pertinent portions of the record, the court finds that the plaintiffs' economic, aesthetic, and recreational interests may have been harmed by the actions of the defendants. In addition, the interests of the members of KEA and SOS may have been harmed to the extent that these groups may sue on behalf of their members.

The court further finds that the interests of the individual plaintiffs and the environmental groups fall within the zone of interests which Congress intended the Clean

---

**2.** It is important to note that the Administrative Procedure Act ("APA") provides citizens with the right to sue the federal agency *only* for relief *other than money damages.* 5 U.S.C. § 702.

Water Act to protect. Therefore, the court concludes that the individual plaintiffs, as well as KEA and SOS, have standing to bring the present action.

■■■■ On the other hand, the court finds that Coeur d'Alene Lake should be dismissed as a plaintiff. Although some courts have allowed suits to be brought in the name of an object of nature when other plaintiffs satisfy standing, this court is of the opinion that it is inappropriate and contrary to long established principles of standing and capacity to sue.

### 2. Laches

The federal government argues that the plaintiffs are barred from bringing this action by the equitable defense of laches. The federal government's argument applies primarily to the plaintiffs' NEPA claims contained in their original Complaint. Because the plaintiffs have, for the most part, dropped their NEPA claims, the court need not address the federal government's laches defense.

■■■■ With respect to ITD, the plaintiffs cannot dispute that this project was designed and planned over a long period of time, and they should have raised objections before work actually began. Nevertheless, the plaintiffs could not have known beforehand that ITD would not live up to the terms and conditions of the Section 404 permit, if in fact ITD did not. Therefore, the court finds that ITD cannot raise the defense of laches to bar claims against ITD for failure to meet the Section 404 permit requirements.[3]

The court notes that the Ninth Circuit Court of Appeals disfavors the use of laches in environmental suits such as this. In *Portland Audubon Soc'y v. Lujan,* 884 F.2d 1233 (9th Cir.1989), the Ninth Circuit court made the following declaration:

> We have repeatedly cautioned against application of the equitable doctrine of laches to public interest environmental litigation.

Laches must be invoked sparingly in environmental cases because ordinarily the plaintiff will not be the only victim of alleged environmental damage. A less grudging application of the doctrine might defeat Congress' environmental policy. Furthermore, citizens have a right to assume that federal officials will comply with applicable law and to rely on that assumption.

*Id.* at 1241 (*quoting Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 854 (9th Cir.1982)).

### C. *Defendants' Motions for Summary Judgment*

Both the federal government and ITD have moved for summary judgment on all causes of action alleged by the plaintiffs. The court will take each remaining cause of action set forth in the Amended Complaint and discuss whether summary judgment should or should not be granted first with respect to the federal defendants, and then ITD.

For clarification, the remaining defendants in this case at this time are:

IDAHO TRANSPORTATION DEPARTMENT and KERMIT V. KIEBERT, Director, Idaho Transportation Department.

FEDERAL HIGHWAY ADMINISTRATION and SAMUEL K. SKINNER, United States Secretary of Transportation.

UNITED STATES ARMY CORPS OF ENGINEERS and LT. COL. JAMES A. WALTER, District Engineer of the United States Army Corps of Engineers.

### 1. *First Count: Violation of Section 404 Permit As Issued.*

■■■ In count one of the Amended Complaint, the plaintiffs allege that ITD and FHwA violated the terms and conditions of the permit issued under Section 404 of the Clean Water Act, 33 U.S.C. § 1344. The plaintiffs first allege that ITD and FHwA

---

**3.** This holding will also apply to FHwA if found to be jointly responsible for violations of the Section 404 permit. As will be discussed in a later portion of this order, the court will reserve ruling on FHwA's status in this suit until after additional briefing has been submitted by the parties.

violated the Section 404 permit by not using the proper fill material on the project. The plaintiffs further allege that the fill exceeded the area of the lakebed described in the application and allowed in the permit. After careful review of all of the memoranda, exhibits, and affidavits submitted by the parties, there appear to be genuine issues of material fact with respect to these claims. Therefore, ITD's motion for summary judgment on this count will be denied.

The plaintiffs contend that FHwA provided 92 percent of the funding and maintained a significant degree of supervision and control over the project. Therefore, the plaintiffs argue that FHwA should also be held liable for the alleged violations of the Section 404 permit. This issue was not directly addressed in any of the memoranda submitted by the parties in relation to the motions for summary judgment, and the plaintiffs have not offered any convincing authority for their claim against FHwA.

■ Whether FHwA can be held liable for violations of the Section 404 permit allegedly committed by ITD and its contractor, Scarsella Brothers, is clearly a question of law which should be resolved on summary judgment. Therefore, the court directs the parties to submit additional briefing on the following *narrow* issue: May FHwA be held liable for any violations of the Section 404 permit committed by ITD and its contractor, Scarsella Bros., Inc? The court would like the parties to address this issue in terms of both statutory liability and/or liability based upon common law principles. The court will reserve ruling on the federal government's Motion for Summary Judgment on count one with respect to FHwA until after the parties have briefed this issue.

■ Also in the First Count, the plaintiffs allege that the bulldozer and the scraper were not authorized as fill in the Section 404 permit. Yet, after the collapse which caused this machinery to fall into the lake, the Corps authorized the Section 404 permit to be amended to include the equipment, and it appears that this was done in

accordance with the required procedures under the Clean Water Act. The plaintiffs do not argue that the amendment was improper. Therefore, the court finds that summary judgment should be granted with respect to *both* ITD and FHwA on this aspect of the First Count.

2. *Second Count: Section 404 Permit Illegally Issued.*

In count two, the plaintiffs allege that the Section 404 permit was wrongfully and illegally issued by the Corps. In order to address this claim, some background discussion of the Clean Water Act is necessary.

The Clean Water Act was passed in 1972 to restore and maintain the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. § 1251(a). The Act's purpose is to secure compliance with new standards and to change existing practices. In order to achieve these goals, Section 301 of the Act makes the discharge of any pollutant into navigable waters unlawful unless authorized in accordance with specified sections of the Act.

The specified sections of the Act are Sections 402 (33 U.S.C. § 1342) and 404 (33 U.S.C. § 1344). Section 402 establishes the National Pollutant Discharge Elimination System ("NPDES") under which the Administrator of the Environmental Protection Agency ("EPA") may issue permits authorizing the discharge of pollutants. Once a Section 402 permit has been issued, the permittee's obligation to comply with the regulatory scheme is determined by reference to the terms and conditions of the permit, whether the permit has been issued by the EPA or an EPA-approved agency. 33 U.S.C. § 1342(k).

Section 404 of the Clean Water Act allows the Secretary of the Army Corps of Engineers to issue permits, after notice and opportunity for public hearing, for the discharge of dredged or fill material into navigable waters at specified disposal sites. Here again, once a Section 404 permit has been issued, the permittee's obligation to comply with the regulatory scheme of the

Clean Water Act is determined by referring to the terms and conditions of the Section 404 permit. 33 U.S.C. § 1344(p).

The case at hand is a citizen suit. Section 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)) permits private citizens to file complaints against (1) any person, including the United States and any other governmental agency to the extent permitted under the Eleventh Amendment, who is alleged to be in violation of (a) an effluent standard or limitation under the Act, or (b) an order issued by the EPA administrator or a State with respect to such a standard or limitation; or (2) against the Administrator of the EPA[4] for an alleged failure of the Administrator to perform an act or duty under the Act which is not discretionary. Thus, in bringing suit under the Clean Water Act, the plaintiffs are *limited* to the types of actions listed above.

 The district courts have jurisdiction over such citizen suits and may order injunctive relief to enforce an effluent standard, or an EPA order, and impose civil penalties under Section 309(d) of the Act (33 U.S.C. § 1319(d)). These civil penalties may be assessed against a federal agency found to be in violation of an effluent standard or limitation, or in violation of the terms of a permit authorized under the Act. *See Sierra Club v. Lujan,* 931 F.2d 1421, 1429 (10th Cir.1991).

 Contrary to plaintiffs' claims, they do not have a private cause of action *against the Corps* for *issuing* the Section 404 permit to the ITD. As noted above, citizen suits are limited under the Clean Water Act. The Act does *not* provide for a citizen suit against the Corps for "wrongful issuance" of a Section 404 permit. In addition, there is no case authority for such a cause of action.

The plaintiffs mistakenly cite to *Sierra Club v. Lujan,* 728 F.Supp. 1513 (D.Colo. 1990), *aff'd* 931 F.2d 1421 (10th Cir.1991), as authority for the proposition that the Clean Water Act waived sovereign immunity, thereby enabling them to bring this action against the Corps for "wrongful is-

suance" of the Section 404 permit. Yet, *Sierra Club v. Lujan* does not support the plaintiffs' position.

In that case, the Bureau of Reclamation and the Department of Interior were sued for violating the terms of a Section 402 permit issued to those agencies by the EPA for the operation of a mine drainage tunnel. The court held that Section 313(a) of the Clean Water Act waived sovereign immunity with respect to federal agencies and facilities found to be *engaged in dumping or fill operations* in violation of the permit provisions of the Act. *See Sierra Club v. Lujan,* 931 F.2d at 1429. Section 313 (33 U.S.C. § 1323(a)) exposes the federal government to the responsibilities under the Act when a particular agency or federal facility is engaged in any activity resulting in the discharge or runoff of pollutants, notwithstanding any immunity of such agencies, officers, agents, or employees under any law.

Thus, it is clear that the Clean Water Act *did* waive sovereign immunity for suits against the government when an agency or facility *engages in unlawful dumping or fill operations.* Yet in the present case, the Corps was *not* engaged in such activity. The Corps simply issued the Section 404 permit, pursuant to its express statutory authority. In addition, the record before the court clearly indicates that the Corps followed the Act's procedural requirements in issuing the Section 404 permit.

 The plaintiffs' claim against the Corps for "wrongful issuance" of the Section 404 permit cannot survive *unless* the court finds a specific waiver of sovereign immunity *and* recognizes a *new* tort action against the Corps. It is well established that the United States may not be sued without its consent. *Block v. North Dakota,* 461 U.S. 273, 278, 103 S.Ct. 1811, 1815, 75 L.Ed.2d 840 (1983); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). In addition, there can be no waiver of sovereign immunity unless it is expressed clearly and un-

---

**4.** The court notes that the EPA is not a defen- dant in this action.

equivocally by Congress. *Army and Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 734, 102 S.Ct. 2118, 2122, 72 L.Ed.2d 520 (1982); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

The Clean Water Act does not provide for such a cause of action against the Corps, nor have the plaintiffs cited a single case supporting such a theory. There has been no waiver of sovereign immunity, and the court is not persuaded that a new tort action should be recognized based on the record now before the court. Therefore, the court finds that the plaintiffs' claim for "wrongful issuance" of a Section 404 permit has no basis in law or fact, and the Corps' motion for summary judgment should be granted on this claim.

■ The plaintiffs further allege in the Second Count that the issuance of the Section 404 permit violated the policy of "no net loss" of wetlands as enunciated in the Memorandum of Agreement ("MOA") executed between the EPA and the Corps on November 15, 1989, and revised on February 6, 1990. This claim must fail for two reasons. First, the agreement does not have the force and effect of law, but rather, is simply a statement of goals for the agencies to strive for in the interpretation and administration of the Clean Water Act and the administrative guidelines under Section 404. As noted by the federal government, when the MOA was executed, the agencies issued the following statement:

> The MOA published today provides general guidance to Corps and EPA personnel on implementing the Guidelines published at 40 CFR 230.10 pursuant to section 404(b)(1) of the Clean Water Act. It does not impose requirements on or otherwise affect the rights of public parties, which continue to be determined by reference to applicable statutory and regulatory provisions. Consequently, the MOA qualifies as an "interpretive rule" and a "general statement of policy...."

54 Fed.Reg. 51,319–02 (1989). The notice published with the revised MOA states:

The MOA interprets and provides internal guidance and procedures to the Corps and EPA field personnel for implementing existing section 404 permit regulations. The MOA does not change substantive regulatory requirements. Rather, it provides a procedural framework for considering mitigation, so that all Corps and EPA field offices will follow consistent procedures in determining the type and level of mitigation necessary to ensure compliance with the section 404(b)(1) Guidelines.

55 Fed.Reg. 5,510–01 (1990). Therefore, the MOA is essentially a statement of policy and procedures intended solely for the internal guidance of EPA and Corps personnel. Nothing in the MOA can be construed as providing the basis for a private cause of action against either the EPA or the Corps for violating the terms of the MOA.

■ The plaintiffs' claim based on violation of the MOA must also fail because the MOA was not in effect when the Section 404 permit was issued on September 26, 1988. The policies and procedures set forth in the MOA were to be applied *prospectively*. Therefore, summary judgment should be granted on this claim.

■ The plaintiffs also allege in the Second Count that the Corps, ITD, and FHwA violated NEPA by not preparing a supplemental Environmental Impact Statement ("EIS"). This claim is moot because the time for bringing a cause of action based on NEPA in this case has long since passed. In addition, the remedy for a violation of NEPA is an injunction preventing the proposed action from taking place until the procedural requirements of NEPA are met. The plaintiffs concede that all claims for injunctive relief in this case are moot.

■ Nevertheless, the plaintiffs' claim also fails on its merits. It is recognized that a federal agency has a continuing duty to gather and consider new information in assessing the environmental impact of its actions. *See* 42 U.S.C. § 4332(2)(A), (B); *Warm Springs Dam Task Force v. Gribble*, 621 F.2d 1017, 1023 (9th Cir.1980). Yet, in *Marsh v. Oregon*

*Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989), the Supreme Court declared:

[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized. To require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made. On the other hand, and as petitioners concede, NEPA does require that agencies take a "hard look" at the environmental effects of their planned action, even after a proposal has received initial approval.

*Id.* at 373–74, 109 S.Ct. at 1859 (footnotes omitted). The Court went on to note that the standard which governs an agency's decision whether to prepare a supplemental EIS is the "rule of reason" standard. *Id.* at 373, 109 S.Ct. at 1859. The "rule of reason" requires the agency to assess the value of the new information to the still pending decision-making process and make a reasoned determination whether it is of such significance as to require supplementing the EIS. *Id.*

In this respect the decision whether to prepare a supplemental EIS is similar to the decision whether to prepare an EIS in the first instance: If there remains "major Federal actio[n]" to occur, and if the new information is sufficient to show that the remaining action will "affec[t]" the quality of the human environment" in a significant manner or to a significant extent *not already considered,* a supplemental EIS must be prepared.

*Id.* at 374, 109 S.Ct. at 1859 (citations omitted) (emphasis added) (alterations in original).

The Court went on to hold that while an agency must apply a "rule of reason" in deciding whether to supplement an EIS, the standard of review of the agency's decision is the "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A) of the Administrative Procedures Act.

■ In the case at hand, the plaintiffs have offered no evidence of any significant new factors which arose prior to the time the project was given final approval and work began. The plaintiffs have also failed to show that any such factors would have affected the quality of the human environment in a significant manner *not already considered* in the EIS. In addition, the court notes that numerous reevaluations were done by the agencies without identification of new factors requiring a supplemental EIS, and the Final Environmental Impact Statement ("FEIS") in this case was never challenged until after work on the project had stopped.

Based upon a careful review of the record, the court finds that the decision not to supplement the EIS was *not* arbitrary and capricious. Therefore, summary judgment should be granted in favor of the defendants on this aspect of the Second Count.

The plaintiffs go on to claim in count two that the defendants violated the FEIS. The FEIS was prepared in accordance with NEPA. The plaintiffs have conceded that all claims based on violations of NEPA are now moot. Nevertheless, the court will briefly address this issue.

When NEPA was enacted, Congress declared a broad national commitment to protect and promote environmental quality. *See* 42 U.S.C. § 4331. NEPA is a procedural statute designed to ensure that federal agencies strive to implement the policies of the Act in all major federal programs. This is accomplished through mandatory procedures which require, among other things, the preparation of a detailed environmental impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C.S. § 4332(2)(C) (Law.Co-op.1989). The court has carefully reviewed the entire record in this case and determined that the agencies fully complied with the procedural requirements of NEPA.

The plaintiffs allege that after the FEIS was prepared, the defendants violated the mitigation measures identified in the FEIS. The plaintiffs apparently claim that there is an implied private right of action for the alleged violations of NEPA. Yet, the plaintiffs offer no authority for the proposition

that a cause of action can be based on "promises" made in an FEIS, and nothing in NEPA itself suggests that such an action was ever contemplated by Congress. The court finds the opinion of the Fifth Circuit Court of Appeals in *Noe v. Metropolitan Atlanta Rapid Transit Auth.*, 644 F.2d 434 (5th Cir.1981), to be particularly instructive:

> Finally, and most significantly, we would point out that to the extent the legislative history indicates any Congressional attitude, it indicates a desire *not* to provide a remedy for private individuals who may be injured by a violation of NEPA.... NEPA contains no such protections or prohibitions against conduct directed at private individuals. NEPA does not even require the protection of the environment. NEPA requires only that, prior to beginning construction of a project likely to affect the environment, an environmental impact statement be produced so that the individuals responsible for making the decision to go ahead with or stop the project do so on a well-informed basis. In that sense, NEPA provides *procedural* rather than substantive protection. Additionally, the legislative history indicates a *specific intent to deny relief to private individuals who may be injured when an environmental impact statement is not followed.*

*Id.* at 438 (emphasis added).

■ Based upon a thorough review of the memoranda submitted by the parties, as well as NEPA itself and the cases interpreting the Act, the court finds that no cause of action can be based on the failure of a project to live up to the assessments contained in a FEIS. A FEIS does not set forth binding promises; rather, its purpose is to provide federal agencies with the best available information regarding the projected environmental impacts of proposed federal action. There is no authority, either under NEPA or case law, for the type of action alleged by the plaintiffs. Therefore, summary judgment should be granted on this aspect of the Second Count.

The plaintiffs further allege that the failure to adhere to conditions in the Section 404 permit and the FEIS constitutes a fraud on the public, violates NEPA, and nullifies the Section 404 permit. Summary judgment should be granted on this aspect of the Second Count because there is no evidence in the record which indicates that any fraud has been committed, all NEPA claims are moot, and the alleged violations of the Section 404 permit are more appropriately addressed as framed in the First Count.

### 3. *Third Count: Violation of Clean Water Act.*

■ In the Third Count, the plaintiffs allege that FHwA and ITD violated the Clean Water Act in conducting the fill operation. Many of the allegations in count three simply restate the claims made in count one. The allegation in count three which must be addressed separately from those in count one is that the stripping of the hillside to create fill material, and the placement of that fill in the lake, resulted in the discharge of pollutants into the lake without a National Pollutant Discharge Elimination System (NPDES) permit under Section 402 of the Clean Water Act.

The plaintiffs argue that although ITD and FHwA had a Section 404 permit, they also were required to have a Section 402 permit for the runoff from the stripping of the hillside and for the sediments which they allege went into the lake with the fill in contravention of the terms of the Section 404 permit. The defendants argue that because a Section 404 permit was issued, a Section 402 permit was not required.

The Section 404 permit allowed the placement of a certain type of fill in the lake. If ITD did not comply with the specific conditions in the Section 404 permit, it violated the permit. Yet the plaintiffs cannot now claim that because the fill did not meet the specifications under the Section 404 permit, ITD was therefore required to secure a Section 402 permit in addition to the Section 404 permit. Only the Section 404 permit was required for the placement of fill in the lake. *See Canada Community Im-*

*provement Soc'y v. City of Michigan City,* 742 F.Supp. 1025, 1030 (N.D.Ind.1990); *see also* EPA regulation, 40 C.F.R. § 122.3(b) (1991):

> The following discharges do not require NPDES [§ 402] permits:
>
> . . . .
>
> (b) Discharges of dredged or fill material into waters of the United States which are regulated under section 404 of CWA.

With respect to plaintiffs' allegation that a Section 402 permit was required for the runoff from the hillside where the fill material was cut from, the federal government argues that this is storm water which was not required to be covered by a Section 402 permit at the time this project was authorized. Yet, as plaintiffs point out, storm water as contemplated under Section 402 is generally considered to be within a municipal or industrial storm sewer collection system. At issue here are dirt and sediments from the hillside being washed down by rain into the lake. Therefore, it is not clear that the storm water provisions under Section 402 apply.

As noted by the court in *McClellan Ecological Seepage Situation v. Weinberger,* 707 F.Supp. 1182 (E.D.Cal.1988):

> [The] EPA does not presently require permits for discharges consisting entirely of stormwater. . . . Moreover, section 405 of the Water Quality Act of 1987, Pub.L. No. 100–4, 101 Stat. 69, amended section 402 of the Clean Water Act and it is now evident that permits for industrial discharges consisting entirely of stormwater might not be required until as late as February 4, 1993.

*Id.* at 1193 (citations omitted).

Based upon affidavits now before the court, it appears that the EPA is currently in the process of developing regulations and procedures for securing a "general permit" under Section 402 for highway construction. In addition, at the hearing on April 9, 1992, counsel for ITD indicated to the court that ITD has made attempts to secure a Section 402 permit, but has been told by EPA officials that such permits are not available at this time because the EPA procedures and guidelines are not yet in place.

Therefore, summary judgment should be granted on this aspect of the Third Count because at the time this project was planned, authorized, and carried out, ITD was not required to obtain a Section 402 permit for the storm water runoff from the hillside.

### 4. *Fourth Count: FHA Violation of APA.*

The plaintiffs allege in the Fourth Count that the FHwA's decisions regarding the interchange and related fill operation were arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"). Summary judgment should be granted in favor of FHwA on this cause of action because the only remedy the court could order against the FHwA is an injunction, and an injunction is now unnecessary and moot.

### 5. *Fifth Count: Corps' Violation of the APA.*

In the Fifth Count, the plaintiffs allege that the Corps violated the APA because its decision to issue the Section 404 permit was arbitrary and capricious. Again, summary judgment should be granted in favor of the Corps on this cause of action because the only relief available against the Corps under the APA is an injunction, and an injunction is now unnecessary and moot.

### 6. *Sixth Count: Pendent Violation of Idaho Lake Protection Act.*

Count Six contains a pendent state claim against the FHwA and ITD for violating Idaho Water Quality Standards by condoning the intentional and negligent dumping of fill material containing sediments, silt, vegetable and mineral materials into the lake by the contractor, Scarsella Brothers. The court notes that on June 7, 1990, the Idaho Department of Health and Welfare, Division of Environmental Quality ("DEQ") notified ITD of possible violations. The DEQ filed a formal charge against ITD on March 7, 1991.

The state administrative action began before the plaintiffs filed this suit in federal court, and it was concluded by a Consent Order signed on December 31, 1991. In addition, the plaintiffs conceded at the hearing that this pendent state claim should be dismissed. Therefore, this claim will be dismissed from the suit.

### C. *Plaintiffs' Motion for Partial Summary Judgment*

The plaintiffs have moved for summary judgment on the Second Count of the Amended Complaint. The allegations contained in count two have been discussed above. Based on that discussion, the plaintiffs' motion should be denied because the court finds that the defendants are entitled to summary judgment in their favor on the claims in the Second Count.

### III. CONCLUSION

In conclusion, the Corps is entitled to summary judgment on all claims and should be dismissed from this suit. Therefore, ITD and FHwA are the only remaining defendants in this action. The plaintiffs' only remaining viable claim is based on the alleged violations of the Section 404 permit by ITD and FHwA contained in the First Count of their Amended Complaint. With respect to this claim, the court finds that there are genuine issues of material fact which cannot be resolved on motions for summary judgment.

### IV. ORDER

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the plaintiffs' Motion to Amend Complaint filed on September 13, 1991, should be, and is hereby GRANTED. The Amended Complaint shall be filed as of the date of this order.

IT IS FURTHER ORDERED that ITD's Motion to Dismiss Pendent State Law Claims, filed on November 15, 1991, should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' Ex Parte Motion for an Extension of Time to File Notice of Opposition to State's Motion to Dismiss Pendent State Claims, filed on March 17, 1992, should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that the federal government's Motion for Summary Judgment filed on September 9, 1991, should be, and is hereby, GRANTED in part and DENIED in part.

Summary judgment is granted in favor of the Army Corps of Engineers and Lt. Col. James A. Walter, District Engineer, on all claims contained in the plaintiffs' Amended Complaint, and the Corps and Lt. Col. James A. Walter are hereby DISMISSED from this action.

Summary judgment is granted in favor of the Federal Highway Administration (FHwA) on all claims in the Amended Complaint except the alleged violations of the Section 404 permit which are contained in the First Count, although summary judgment is also granted in favor of FHwA on the alleged Section 404 violation based upon the construction equipment.

IT IS FURTHER ORDERED that the parties shall submit additional memoranda on the following *narrow* issue: *May FHwA be held liable for any violations of the Section 404 permit committed by ITD and its contractor, Scarsella Bros., Inc.?*

The plaintiffs shall file their memorandum within fourteen (14) days of this order, and the defendants shall file their responses fourteen (14) days later. The plaintiffs shall then have fourteen (14) days to file a reply memorandum if they so desire.

IT IS FURTHER ORDERED that the plaintiffs' Motion for Partial Summary Judgment, filed on November 15, 1991, should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that the Idaho Transportation Department's Motion for Summary Judgment, filed on November 15, 1991, should be, and is hereby, GRANTED in part and DENIED in part.

Summary Judgment is granted in favor of ITD on all claims in the Amended Complaint except the alleged violations of the Section 404 permit which are contained in the First Count, although summary judg-

ment is also granted in favor of ITD on the alleged Section 404 permit violation based upon the construction equipment.