**M. NOE, Plaintiff-Appellant,**

v.

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, John Doe, Secretary of Transportation, et al., Defendants-Appellees.**

No. 80–7263.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 4, 1981.

Rehearing and Rehearing En Banc
Denied June 18, 1981.

Haas, Holland, Lipshutz, Levison & Gibert, Richard N. Hubert, Atlanta, Ga., for plaintiff-appellant.

Jerry Jackson, Robert L. Klarquist, Donald Mileur, Dept. of Justice, Washington, D. C., Curtis E. Anderson, Asst. U. S. Atty., Atlanta, Ga., for Secretary of Transp., et al.

Alston, Miller & Gaines, Ronald L. Reid, Atlanta, Ga., for Moseman Const. Co.

Robert A. Boas and Charles N. Pursley, Jr., Atlanta, Ga., for Parsons Brinckerhoff Tudor JV and MARTA.

Judson Graves, Atlanta, Ga., for Horn Fruin/Colnon, JV.

Before FAY and VANCE, Circuit Judges and ALLGOOD *, District Judge.

FAY, Circuit Judge:

Plaintiff-appellant seeks this Court's reversal of the District Court's dismissal of her complaint for lack of jurisdiction. Because we agree with the District Court that the National Environmental Policy Act (NEPA) does not give rise to a private cause of action for failing to adhere to the Environmental Impact Statement required by NEPA, we affirm the judgment of the District Court.

Appellant lives and maintains a bookstore in an apartment building in Atlanta, Georgia near a construction site for the city's rapid transit system (MARTA). As a result of the physical presence of the construction site and the noise levels generated therefrom, appellant asserted that her business enterprise suffered economic injury. Appellant brought suit in federal District Court seeking injunctive and declaratory relief as well as money damages. As the basis for federal jurisdiction, appellant asserted that the failure of MARTA and its builders to stay within the noise levels predicted by the environmental impact statement constituted a violation of that section of NEPA that requires the filing of such statements prior to beginning construction, 42 U.S.C. § 4332. Moreover, appellant asserted that violation of that statute gave rise to an implied private right of action on her part against all those involved in the violation. The District Court, holding that 42 U.S.C. § 4332 requires only the filing of an environmental impact statement, not compliance therewith, dismissed the suit for lack of jurisdiction.[1] We affirm the judgment of the District Court on the grounds that violation of 42 U.S.C. § 4332, assuming for these limited purposes that one has occurred, does not create an implied private right of action on behalf of injured citizens.

---

* District Judge of the Northern District of Alabama sitting by designation.

1. Though appellant asserted a number of other causes of action, the District Court correctly concluded that they were all claims based on state law. Accordingly, the ability to maintain this suit in federal court was dependent solely on the court's resolution of the NEPA issue.

Though the question of an implied private right of action under NEPA has never been considered by this Court before, it has been considered by two other Circuit Courts of Appeals, *Mountain Brook Homeowner's Association, Inc. v. Adams*, 620 F.2d 294 (4th Cir. 1980) (unpublished opinion); *City of Blue Ash v. McLucas*, 596 F.2d 709 (6th Cir. 1979). The question of implied rights of action in general has received extensive treatment in decisions of the Supreme Court and this Court, *Transamerica Mortgage Advisers, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980), as well as in scholarly commentaries, Note, Federal Courts—Implied Rights of Action; *Transamerica Advisers, Inc. v. Lewis*, 21 Boston College L.Rev. 1143 (1980). Accordingly, we have no fear that this case will require us to take a perilous cruise through unchartered waters.

The history of the Supreme Court's analysis of implied private action cases is interesting and worth summation. In *Cort*, the Supreme Court established a four-pronged test to be applied in analyzing the propriety of allowing a case to be maintained as an implied private right of action under a federal statute not specifically creating such a right. Those factors were:

(1) Is the plaintiff a member of the class for whose special benefit the statute was created?

(2) Is there any indication of legislative intent either to create or deny the remedy sought? ·

(3) Is it consistent with the underlying statutory purposes to imply a remedy such as that sought?

(4) Is the cause of action one that is traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?

The Court did not offer any guidance as to the relative significance of each factor or the need to establish the presence or absence of all of them. The decision was, however, far more restrictive than earlier ones in considering the circumstances in which inferring a private right of action would be appropriate. *Compare, J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

Three years later the Supreme Court handed down its decisions in *Cannon v. University of Chicago, supra,* and *Touche Ross & Co. v. Redington, supra.* In *Cannon* the Court allowed the plaintiff to maintain an action on an implied private right theory for an alleged civil rights violation under § 901(a) of Title IX of the Education Amendment Acts of 1972. The Court found that all four of the factors set forth in *Cort* were satisfied and, accordingly, did not attempt to weigh their relative importance. Shortly after *Cannon* the Supreme Court handed down *Touche Ross, supra,* in which it severely restricted the type of analysis courts should employ when faced with the implied private action issue. *Touche Ross,* like *Cort,* involved a plaintiff seeking to bring an implied private action under the securities laws, specifically section 17(a) of the Securities Exchange Act of 1934. In *Touche Ross* the Court enunciated its new approach, that the task of federal courts in cases such as this was limited *solely* to determining whether Congress intended to create the private right of action being asserted in a given case. Consistent with that shift in analytic framework the Court considered the first two criteria set out in *Cort* and, finding them not to be satisfied, declined to consider factors three and four. This is most significant, because factors three and four, going to the questions of the consistency of the implied action to the policy underlying the statute and the relegation of such cases to state law, are considerably easier for a plaintiff to establish than the factors requiring proof of affirmative legislative intent to provide the relief sought.

The Court's treatment of this issue the following term, in *Transamerica Mortgage Advisers, Inc. v. Lewis, supra,* continued the trend of further restricting those situations in which private causes of action would be implied. In *Lewis,* the plaintiff sought to have the Court find an implied cause of action in section 206 of the Investment Advisers Act. The Court refused to do so but, unlike the two-step analysis of *Touche Ross,* the Court based its decision solely on the fact that the second factor in *Cort,* that there be an indication of legislative intent to create a private right of action, was not satisfied. The fact that the plaintiff in *Lewis* was within the class especially intended to be benefited by the statute, the first *Cort* factor, was immaterial to the Court's conclusion. Given this approach, it seems reasonable to conclude that the Supreme Court's earlier statement in *Cannon* and *Cort* that when "it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action," 441 U.S. at 694, 99 S.Ct. at 1956, is no longer the law.

In apparent failure to recognize the impact of the Supreme Court's decisions in *Lewis* and *Touche Ross,* the appellant would have this Court apply the four-pronged *Cort* test in the less restrictive manner of the Court's earlier decision in *Cannon.* Though we are of the opinion that we are no longer required to make such multi-stepped analysis, it makes no difference here since the results reached by either approach are identical. This is true because we conclude that appellant has not proven any of the four *Cort* criteria.

■ The first criteria set out in *Cort* is that the plaintiff must be a member of the class for whose especial benefit the statute was enacted. Appellant reasons that since she was injured by construction covered in the environmental impact statement, which in turn is required by NEPA, she must be a member of the special class for whose protection the statute was enacted. There are two critical flaws with the logic of that analysis. First, the appellant confuses one

who incidentally has been injured by an alleged violation of a federal statute, with one whose injury the statute was specifically designed to prevent. As Justice Stevens noted in *Cannon,* ". . . the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." 441 U.S. at 688, 99 S.Ct. at 1953. The first requirement of *Cort* was well analyzed in *Stern v. Merrill Lynch, Pierce, Fenner & Smith,* 603 F.2d 1073 (4th Cir. 1979), in which Judge Russell wrote:

> "The first requirement for establishing an implied right of action on account of a violation of a federal statute, as thus enunciated in *Cort*—what is characterized as the 'threshold test' for such an action, and a test which 'has been central to all implication cases, from the first statutory implication decision in which it [the doctrine] was originally formulated' —is that the plaintiff be a member of a class 'for whose especial benefit the statute was enacted.' '[S]atisfaction of the especial benefit criterion,' [as declared in *Cort* ] 'is a *necessary,* but not a sufficient, basis for obtaining an implied remedy.' (Emphasis added) And *Cort* gave a very precise statement of who might qualify and who might not qualify as a statutory beneficiary under this doctrine of a federal implied right of action. To qualify as a statutory beneficiary for whom a private action may be implied, it is not enough that the plaintiff '[has] a financial stake in the outcome of the case' or '[is] at least an incidental beneficiary' or is 'secondarily benefitted,' or that his protection is a secondary or a 'subsidiary' purpose of the statute. The requirement of *Cort* was specific: the protection and benefit of the party seeking such action must be the 'primary congressional goal' of the statute, or, as another has stated it, 'the plaintiff must be the "primary" beneficiary of the statute.' "

603 F.2d at 1085–86. It is clear to us that appellant has failed to demonstrate that she is in a class for whose especial benefit the statute was enacted. The second problem

with appellant's logic helps to explain the reason for her first problem. The reason she failed to show she was a member of a special class is because the statute was not designed to protect any special class, either those which include or those which exclude appellant. The statute was designed to promote the protection of the environment and, to the extent it was intended to aid individuals, to promote the general welfare of all members of society. On the basis of the preceding discussion, we conclude that appellant does not and can not satisfy the first criteria of *Cort.*

■ The second criteria of *Cort* is that there be an indication of legislative intent to create or deny the remedy sought. Rather than offer evidence on this point, appellant refers this Court to the Supreme Court's statement in *Cort* and in *Cannon* and argues that once federal law grants a class of persons a certain right it is not necessary to show an intention to create a private right of action. While one may argue such was the law prior to the Supreme Court's decision in *Lewis*, we do not find much validity in that position today. *Lewis* directs federal courts to concentrate on the question of Congressional intent to create or deny a right of recovery. Moreover, even if appellant's statement of the law were correct, we have already demonstrated that she cannot rely on it because she is not a member of a class for whose especial benefit the statute was created. Finally, and most significantly, we would point out that to the extent the legislative history indicates any Congressional attitude, it indicates a desire not to provide a remedy for private individuals who may be injured by a violation of NEPA. This case is unlike *Cannon* in which the Supreme Court found the affirmatively protective language of the statute[2] suggestive of a legislative desire to meaningfully effectu-

ate a policy consistent therewith. NEPA contains no such protections or prohibitions against conduct directed at private individuals. NEPA does not even require the protection of the environment. NEPA requires only that, prior to beginning construction of a project likely to affect the environment, an environmental impact statement be produced so that the individuals responsible for making the decision to go ahead with or stop the project do so on a well-informed basis. In that sense, NEPA provides procedural rather than substantive protection. Additionally, the legislative history indicates a specific intent to deny relief to private individuals who may be injured when an environmental impact statement is not followed. Senator Jackson, who introduced NEPA in Congress, stated the purposes of the statute as follows:

> The purpose of the proposed legislation is three-fold: *First,* to establish a national policy on the environment; *Second,* to authorize expanded research and understanding of our national resources, the environment, and human ecology; and *Third,* to establish in the Office of the President a properly staffed Council of Environmental Quality Advisors.

115 Cong.Rec. 14347 (May 29, 1969). That suggests that there was no desire to have NEPA used as a vehicle for judicial redress of private injuries. Also significant is the fact that in the bill passed by the Senate, it was stated that "the Congress recognizes that 'each person has a fundamental and inalienable right to a healthful environment ...'." Conference Report No. 91–765, pages 2751, 2768, U.S.Code Congressional and Administrative News (1969). However, the Conference Committee eliminated this broad statement of rights "because of doubt on the part of the House conferees with respect to the legal scope of the original

---

**2.** Section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, for example, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Rather

than merely banning discrimination by those who are recipients of federal funds, the statute provides a benefit specifically for those who suffer from sex discrimination. Because there is an express identification of the special class to be benefitted, then, the statute was not enacted merely for the protection of the general public.

Senate provision." *Id.* page 2769. For all these reasons, we conclude that there was no legislative intent to grant a private remedy under NEPA.

 Having concluded that neither of the first two *Cort* criteria have been established, we believe *Lewis* allows us to terminate our inquiry. Nonetheless, we briefly review the third and fourth criteria and conclude that they too cannot be satisfied by the appellant in this case. The third factor is whether it is consistent with the underlying statutory purpose to imply a remedy such as that sought. The policy underlying NEPA's requirement of environmental impact statements is to provide local and regional decision-makers with the best estimates or projections of the impact on the environment of a given project. Since these estimates or projections are of necessity only scientific approximations, it is unlikely that they will be absolutely accurate in all cases. If private citizens are allowed to sue for money damages each time one of these projections turns out to be inaccurate, the result is likely to be that those making the predictions will "hedge" their estimates of the impact of a given project. Rather than being consistent with the statutory purpose of providing decision-makers with the best available information, the result is likely to be that they would receive distorted information. Accordingly, we conclude that the third *Cort* factor has not been established.

 The fourth and final criteria is that the cause of action must not be one that is traditionally relegated to state law. In the instant case, not only is the cause of action of the type normally relegated to state law, but the specific violations alleged are all state law claims with the exception of that based on NEPA. In its simplest form this is a nuisance action, a classic area in which state law controls. Accordingly, we conclude that the fourth *Cort* factor has not been established.

 Not only has appellant failed to prove her right to prevail under the more recent analysis of the Supreme Court in *Lewis* and *Touche Ross* and of this Court in

*Rogers v. Frito-Lay, Inc., supra,* she cannot even satisfy the more liberal standards of the Supreme Court's earlier decisions in *Cort* and *Cannon.*

As this Court stated in *Rogers, supra,*

The issue is not whether, on the merits, balancing on-the-one-hand with on-the-other, advocates of judicial remedies have a better case than opponents, but whether, considering the purpose and function of the statute and its legislative history, we can find a legislative intent to recognize a judicial remedy. . . . The standard is that those who contend a statute has endowed them with a cause of action must establish their proposition.

611 F.2d at 1085. Appellant has offered nothing and our research has failed to disclose anything to suggest a Congressional intent to recognize an implied judicial remedy for an alleged violation of NEPA. The statute, the legislative history, and the decisions of two other Circuit Courts of Appeals directly on point indicate exactly opposite.

Accordingly, the judgment of the District Court dismissing this action for lack of jurisdiction is AFFIRMED.