**TOWN OF FAIRVIEW,
TEXAS, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF
TRANSPORTATION, Federal Aviation
Administration, Defendant.**

**No. CIV.A. 02–0087(JDB).**

United States District Court,
District of Columbia.

April 15, 2002.

Henry F. Brandenstein, Jr., Rees, Broome & Diaz, P.C., Vienna, VA, Rachel Leigh Smith, Thomas Owen Mason, Williams Mullen, McLean, VA, for Plaintiff.

John Most, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION

BATES, District Judge.

The Town of Fairview, Texas ("Fairview" or "plaintiff") brings this case against the Department of Transportation, Federal Aviation Administration ("FAA") to enjoin further development of the McKinney Municipal Airport ("MMA") pending an environmental review. Presently before the Court are Fairview's motion for a preliminary injunction and the FAA's motion to dismiss. For the reasons stated below, Fairview's motion for a pre- liminary injunction is denied and the FAA's motion to dismiss is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Fairview is a semi-rural town of 5,000 citizens located less than a mile from MMA, a public-use airport that is sponsored, owned, and operated by the City of McKinney, Texas ("McKinney"). MMA was established in the 1970s, and over the years, the planning and development of MMA has been financed, in part, with funds provided by the FAA under the Airport Improvement Act of 1982, 49 U.S.C. § 47107, et seq., and administered by the State of Texas. MMA is designated as a reliever airport for Dallas/Ft. Worth International Airport, which is located less than 30 miles away.

In February 1999, Fairview filed an administrative claim with the FAA in accordance with 14 C.F.R. § 16 alleging that McKinney was in violation of certain grant assurances under 49 U.S.C. § 47107.[1] Fairview claimed that MMA poses a threat to the residents of Fairview because a nearby landfill and other environmental factors attract birds that traverse the airport flight pattern south of MMA. *Town of Fairview v. City of McKinney*, 2001 WL 88072, at \*1 (F.A.A. January 23, 2001); *Town of Fairview, Texas v. City of McKinney, Texas*, 2000 WL 1100236, at \*1 (F.A.A. July 26, 2000). Fairview also alleged that McKinney had not been considering Fairview's interests, that McKinney had violated air and water quality standards, and that McKinney had not maintained an Airport Layout Plan ("ALP")[2] that accurately depicted the observed increase in flight patterns and corporate jet

1. Grant assurances are conditions to federal funding that are binding upon an airport sponsor that applies for a grant under the FAA's Airport Improvement Program.

2. An ALP is a depiction of certain elements of an airport, including its boundaries, facilities, and non-aviation areas. *Town of Fairview*, 2001 WL 88072, at \*15.

aircraft service. *Town of Fairview*, 2001 WL 88072, at *14–16. Fairview's claims were framed as violations of grant assurances numbers 5 (preserving rights and powers), 7 (consideration of local interest), 10 (compliance with air and water quality standards), 19(a) (operation and maintenance), 20 (mitigation of bird hazard), and 29 (maintaining an ALP). In addition, Fairview raised various claims under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq., including a challenge to a 1988 environmental assessment and an allegation that the FAA was required to conduct an environmental review of certain planned construction projects. *Id.* at *17–18.

In the FAA's Final Decision and Order issued in January 2001, the FAA Associate Administrator affirmed that McKinney had violated grant assurances numbers 19(a) and 20, and upheld an order requiring McKinney to take certain steps to mitigate the bird hazard and close the landfill. *Id.* at *20–22. The Associate Administrator also concluded that NEPA claims against FAA could not be raised in a Part 16 administrative proceeding. *Id.* at *17–20. Fairview petitioned the Court of Appeals for the District of Columbia Circuit for review of the FAA's final decision. At the time Fairview filed the complaint in this case, that appeal was still pending.

In its present complaint filed on January 18, 2002, Fairview presents 59 pages of highly detailed allegations. At heart, however, Fairview's action and its motion for a preliminary injunction are directed at a planned expansion at MMA. Fairview asserts that for the first several years of MMA's existence, Fairview understood that MMA was focused on providing commercial airspace for recreational private pilots, and was in effect a "Saturday Pilot"

general aviation airport. In 1999, however, Fairview became aware that McKinney was planning a major expansion of MMA, including the addition of a runway and increased operational services, for the purpose of turning MMA into an economic driver for McKinney. This planned expansion, Fairview alleges, has been undertaken with the FAA's permission, and has been financed, in part, with federal funds provided by the FAA and administered by the Texas Department of Transportation. Fairview asserts that it also expects McKinney to seek reimbursement from the FAA for funds that McKinney has obtained from private and municipal sources.

Fairview supports its allegations about the anticipated airport expansion with several declarations from Cynthia Kalina–Kaminsky, an engineering consultant who has been researching developments at MMA by, among other things, following the activities of McKinney municipal committees, collecting press reports, and analyzing MMA's Master Plan and ALP. *See* Declaration, Supplemental Declaration, Second Supplemental Declaration, Third Supplemental Declaration, and Fourth Supplemental Declaration of Cynthia Kalina–Kaminsky. According to Ms. Kalina–Kaminsky, McKinney has commenced planning, land purchases, and financing activities for an expansion of MMA "that will increase throughput of planes, allow for an increase in plane size to accommodate cargo jets, and change the nature of the airport from a small, private recreational general aviation airport to an airport with strong cargo operations." Supp. Kalina–Kaminsky Dec. ¶¶ 6–7, 9, and 52. Based on her research, Ms. Kalina–Kaminsky anticipates the building of at least one additional runway, the development of a thoroughfare for trucking traffic, an ex-

pansion of through-the-fence operations,[3] the construction of a new taxiway, the relocation of fuel farms,[4] and the construction of a new control tower. *Id.* ¶¶ 7, 9–10, 18–20, 23–24, 25–28, and 30. Ms. Kalina–Kaminsky opines that the various construction activities planned at MMA are not consistent with its existing Master Plan and ALP. *Id.* ¶¶ 8, 19, 26, 29–30, 33, and 42.

Fairview alleges that the expected expansion of MMA, as described by Ms. Kalina–Kaminsky and as set forth in Fairview's Complaint, will have a variety of detrimental effects. According to Fairview, air and water quality, cultural resources, and flora and fauna in surrounding wildlife areas will all be adversely affected by the expansion. In addition, Fairview suggests, the increase in jet traffic that will inevitably accompany MMA's expansion will create noise problems and aggravate the bird hazard. Indeed, Fairview submits that it has already observed an increase in jet traffic since January 2002. Fairview also points to the opening of a customs office at MMA in October 2001,[5] and argues that increased introduction of cargo from foreign locations poses greater import risks.

Beyond its allegations focused on the planned airport expansion, Fairview complains about certain activities at MMA that do not appear to be directly related to the expansion. For example, Fairview alleges that MMA poses a security threat because there are no pilot or passenger security checks at MMA, airport personnel are not required to wear identification, and the gates of the airport remain open and unattended throughout the day. In addition, Fairview complains that the FAA's response to the long-standing bird hazard continues to be inadequate and that the FAA has not been enforcing MMA's compliance with a non-standard flight pattern. Fairview also refers to various alleged violations committed by the FAA in the past, including its approval of construction projects despite MMA's alleged failure to comply with FAA environmental orders.

Fairview frames its factual allegations into five separate counts. In its First Count, Fairview alleges that under NEPA the FAA must complete an Environmental Impact Statement ("EIS"), including a noise study, before permitting any expansion at MMA. In Count Two, Fairview alleges that the FAA has violated 14 C.F.R. § 91.119 by failing to ensure the safe operation of MMA. In its Third Count, Fairview alleges that the FAA has violated 49 U.S.C. § 44701 by failing to adopt appropriate security measures. Fairview claims in its Fourth Count that the FAA has violated 49 U.S.C. § 47107 by failing to ensure McKinney's compliance with its obligations under certain grant assurances.[6] Specifically, Fairview claims

---

3. "Through-the-fence" is a term of art used in airport operations "to denote a plan whereby a private landowner is allowed access to publicly owned airport property, subject to certain conditions adapted from FAA recommendations, in order to conduct a private business in airport-related enterprises." *Oxley v. City of Tulsa,* 794 P.2d 742, 745 (Ok.1989).

4. Fairview alleges that McKinney has already built a temporary fuel farm, and plans to build a permanent fuel farm. *See* Complaint ¶¶ 187–204.

5. This customs office is not presently manned on a full-time basis, although Fairview expects it to be within the next few months. Third Supp. Kalina–Kaminsky Dec. ¶ 21.

6. Fairview's Complaint cites not to 49 U.S.C. § 47107, but to 49 U.S.C. § 47101, which contains a statement of United States policies regarding aviation. However, because Fairview refers to 49 U.S.C. § 47107 in its opening brief (at p. 1), and because that section governs grant assurances, the Court will assume that Fairview is bringing its grant assurances claim under that section.

that the FAA: has failed to ensure that McKinney has maintained good title to the land surrounding the airport (grant assurance # 4); has failed to require that fair consideration be given to the interest of the community near where MMA is located (# 7); has failed to require that MMA be operated in a safe and serviceable condition (# 19); has failed to require mitigation of the bird hazard (# 20); and has failed to prohibit expansion not included in an approved ALP (# 29). Finally, in its Fifth Count, Fairview seeks a declaratory judgment that the FAA has negligently overseen MMA.

On February 13, 2002, the FAA moved to dismiss Fairview's claims for lack of subject matter jurisdiction and failure to state a claim. As discussed more fully below, the FAA's motion is based, in part, on the theories that Fairview has not properly exhausted its administrative remedies and that the D.C. Circuit has exclusive jurisdiction over certain of Fairview's claims.

Presumably in response to the FAA's motion, Fairview voluntarily withdrew its appeal pending in the D.C. Circuit on February 21, 2002. Even more importantly, Fairview narrowed its claims in this case. In its reply brief, Fairview explained that, as a factual matter, its action was based only "on the current expansionary activity at the MMA and the plans of the activity to come," and that "additional information from prior years ... set forth in Fairview's Complaint and Motion for Injunction ... was provided as background." Fairview Reply Brief at 9. At a hearing, Fairview further stated that, as a legal matter, the only claim Fairview was continuing to maintain was its claim under NEPA.

Although Fairview has set forth varying iterations of its request for relief, it appears that Fairview presently seeks an injunction: 1) requiring the FAA to suspend all expansion activities at MMA until the FAA conducts an EIS; 2) requiring the FAA to suspend all federal funding to McKinney until an EIS is performed; 3) requiring a public pronouncement of what the expansion plans for MMA are; and 4) halting the incremental increase in jet traffic over Fairview that has allegedly occurred since the beginning of 2002.

## DISCUSSION

The FAA has moved to dismiss Fairview's entire complaint for lack of subject matter jurisdiction and failure to state a claim. Because Fairview has decided to pursue its NEPA claim alone, the Court will discuss Fairview's other claims only briefly before moving to a more substantive discussion of Fairview's NEPA claim.

### I. 49 U.S.C. § 47107—Alleged Failure to Ensure Compliance with Grant Assurances

The Secretary of Transportation has authority under 49 U.S.C. § 47107 to approve a project grant application upon receipt of written assurances from the airport sponsor. In its Complaint, Fairview alleges that the FAA has improperly allowed McKinney to violate several written grant assurances.

██ As noted above, Fairview previously brought claims in a Part 16 administrative proceeding alleging that McKinney had breached several grant assurances. In fact, Fairview's Part 16 claim raised four of the five grant assurances (numbers 7, 19, 20, and 29) about which Fairview now complains in this action. To the extent that Fairview is seeking a determination that the FAA wrongfully allowed McKinney to violate these same grant assurances, and to the extent that the factual basis for McKinney's alleged violation is

the same as in the Part 16 proceeding, Fairview essentially seeks judicial review of the FAA's decision in the Part 16 proceeding. The parties agree, however, that such a review is vested exclusively in the courts of appeals.[7] *See* 14 C.F.R. § 16.247 (a person may seek judicial review in the courts of appeals pursuant to 49 U.S.C. § 46110); *Town of Fairview*, 2001 WL 88072, at *21 (directing Fairview to file any appeal in the courts of appeals); 49 U.S.C. § 46110(c) (the courts of appeals have "exclusive jurisdiction" over an appeal from an order under this part). The fact that Fairview has now withdrawn its appeal to the D.C. Circuit does not enable Fairview to bring its claim here instead. *See City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C.Cir.1979) ("If ... there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.").

■ To the extent that Fairview's allegations about grant assurances have a different factual basis than the claims Fairview brought in its earlier administrative proceeding, Fairview's proper recourse is to seek administrative review of its allegations against McKinney. *See* 14 C.F.R. § 16.1, et seq. (providing administrative complaint process for all proceedings involving federally-assisted airports arising out of, *inter alia*, grant assurances). If Fairview is dissatisfied with the FAA's decision on these claims, Fairview may seek judicial review in an appropriate court of appeals, which has exclusive jurisdiction. *See* 14 C.F.R. § 16.247; 46 U.S.C. § 46110(c). Accordingly, with respect to any new grant assurance allegations, Fairview's claims must be dismissed because

Fairview has not exhausted its administrative remedies and because this Court would lack jurisdiction over any appeal.

## II. 14 C.F.R. § 91.119—Alleged Failure to Ensure Safe Operation of MMA

Operation of an aircraft below 1,000 feet over any congested area of a city, town, or settlement is prohibited by 14 C.F.R. § 91.119. Fairview's claim under this provision resembles, at least in part, complaints about bird migration and about MMA's alleged failure to follow a nonstandard flight plan that Fairview previously raised in its Part 16 administrative proceeding. To the extent that the factual basis for the present claim is the same as in that prior administrative proceeding, Fairview's allegations should be dismissed because review of the Part 16 proceeding is vested exclusively in the courts of appeals, as discussed in Part I above.

To the extent that Fairview's claim has a different factual basis not already the subject of a Part 16 proceeding, Fairview's initial recourse must still be through the FAA's administrative process. *See* 14 C.F.R. § 16.1, et seq.; 14 C.F.R. § 13.5 ("Any person may file a complaint with the Administrator with respect to anything done or omitted to be done by any person in contravention of any provision of any Act or of any regulation or order issued under it, as to matters within the jurisdiction of the Administrator."). By declining to seek a remedy through an FAA administrative proceeding, Fairview has failed to exhaust its administrative remedies, and its claims should be dismissed. *See McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (a litigant is generally required to exhaust

---

**7.** Fairview notes that it "understands that it must appeal to the FAA or the Court of Appeals for the D.C. Circuit for additional relief concerning McKinney's violation of its Grant Assurances." Fairview Reply at 9 n. 2.

his administrative remedies before seeking judicial relief).[8]

### III. 49 U.S.C. § 44701—Alleged Failure to Require MMA to Adopt Appropriate Security Measures

The FAA's duties with regard to "promot[ing] safe flight of civil aircraft in air commerce" are set forth in 49 U.S.C. § 44701. Fairview's claim under this section is based upon its allegation that the FAA has failed to monitor MMA's efforts to maintain physical security at the airport. *See* Complaint ¶¶ 444–53.

As the FAA points out, any complaint under 49 U.S.C. § 44701 would have to be raised initially in an FAA administrative proceeding. *See* 49 U.S.C. § 46101 ("A person may file a complaint in writing with the . . . Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator [ ] about a person violating this part or a requirement prescribed under this part."). Moreover, jurisdiction over any appeal from such a proceeding would again be vested solely in the courts of appeals. *See* 49 U.S.C. § 46110(c). Consequently, Fair-

view has failed to exhaust its administrative remedies, and may not bring an action in this Court.

### IV. 42 U.S.C. § 4321, et seq.—Alleged Violation of NEPA

Fairview's remaining claim in this action—and apparently the only claim that Fairview is continuing to pursue—is that the FAA violated NEPA by failing to conduct an environmental evaluation and a noise study before allowing McKinney to proceed with expansionary activity at MMA.[9] NEPA, of course, requires federal agencies to prepare a detailed EIS for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The FAA moves to dismiss Fairview's NEPA claim on the grounds that there is no reviewable agency action and that Fairview's claim is not ripe.

#### A. No Private Right of Action Under NEPA

The FAA notes, as a preliminary matter, that NEPA does not provide Fairview with a private right of action. Any claim under

---

**8.** Fairview raises a due process challenge to the requirement that it exhaust its administrative remedies with respect to safety and security claims. Because Fairview has now apparently abandoned its safety and security claims, the Court will not discuss those arguments in detail. The Court observes, however, that, to the extent that Fairview has not previously brought its safety and security claims to the FAA's attention, Fairview has little basis for concluding that an administrative complaint would be futile or inadequate. Furthermore, to the extent that Fairview's claims are essentially the same as those alleged in its administrative proceeding, Fairview's recourse was to appeal the Part 16 determination to a court of appeals, not to file a new claim in this Court. The Court is also not persuaded that Fairview has made a "clear showing of irreparable injury" that entitles it to avoid seeking administrative re-

view. *See Randolph–Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 108 (D.C.Cir. 1986). The potential harm to Fairview from a possible bird strike or from the alleged inadequate security at MMA, although worrisome, remains speculative. The circumstances presented here do not warrant having this Court impose a remedy without the benefit of the application of FAA expertise to the issues.

**9.** Because Fairview has stated unequivocally that its NEPA allegations relate only to the anticipated construction at MMA, the Court will focus its analysis on this issue. As noted above, in its Part 16 proceeding, Fairview raised other NEPA allegations, such as alleged deficiencies in the FAA's 1988 environmental assessment. *Town of Fairview*, 2000 WL 1100236, at *25–27.

NEPA, the FAA asserts, is properly brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, which Fairview has not cited in its Complaint. In response, Fairview contends that it has an implied right of action under NEPA. Fairview urges the Court to apply the four-prong test employed by the Fifth Circuit in *M. Noe v. Metro. Atlanta Rapid Transit Auth.*, 644 F.2d 434, 436 (5th Cir. 1981), to determine the existence of an implied right of action under NEPA.

■ Fairview's arguments are unpersuasive. The law in this Circuit is clear that no private right of action exists under NEPA. *See, e.g., Florida Audubon Society v. Bentsen*, 94 F.3d 658, 665 (D.C.Cir.1996) ("because NEPA does not offer a private right of action for individual plaintiffs seeking to enforce the EIS procedural requirement, a private individual must found his right to sue on some other basis"); *Public Citizen v. United States Trade Representative*, 5 F.3d 549, 551 (D.C.Cir. 1993) (because Congress did not create a private right of action under NEPA, plaintiff must bring its claim for judicial review under the APA); *Public Citizen v. Office of United States Trade Representatives*, 970 F.2d 916, 918 (D.C.Cir.1992) ("NEPA does not create a private right of action"); *Nat'l Coalition to Save Our Mall v. Norton*, 161 F.Supp.2d 14, 19–20 (D.D.C.2001) (in order to enforce NEPA's EIS requirements, plaintiffs must bring their allegations under a separate statutory scheme, typically the APA).

Moreover, nothing in the *M. Noe* decision provides a basis for identifying a new implied private right of action. There, the Fifth Circuit rejected the argument that there is a private right of action under NEPA, and expressly concluded that "there was no legislative intent to grant a

private remedy under NEPA." 644 F.2d at 439. Accordingly, there is no basis for Fairview to bring a claim directly under NEPA, and the Court will treat Fairview's NEPA claim as if it were asserted pursuant to the APA.

**B. Reviewability of Fairview's NEPA Claim Under the APA**

■ The APA provides an action for injunctive relief for persons who have been " 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.' " *Public Citizen*, 970 F.2d at 918 (quoting 5 U.S.C. § 702). The APA "permits review only of 'final agency action.' " *Id.* (quoting 5 U.S.C. § 704). Here, the FAA argues that Fairview's NEPA claims are not judicially reviewable because there has not yet even been an administrative consideration of MMA's planned expansion, much less a "final agency action."

In response, Fairview argues that McKinney has already taken the first steps in its expansion of MMA by purchasing land, raising money, and engaging in various planning activities. Fairview asserts that McKinney's preliminary activities created a duty for the FAA to examine the cumulative impact of all the anticipated expansionary activities at the MMA. The FAA's failure to conduct an EIS by now, Fairview argues, constitutes "recalcitrance in the face of duty," which is reviewable by a district court. *See Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C.Cir.1987) (agency inaction is reviewable under APA where it constitutes " 'agency recalcitrance . . . in the face of a clear statutory duty . . . of such magnitude that it amounts to an abdication of statutory responsibility' " (citation omitted)).

The Court does not agree that there is reviewable agency action here.[10] As an

**10.** Even if there were final agency action, jurisdiction to review such an action would

initial matter, the administrative process with respect to the anticipated construction has only recently begun. As the FAA explains, the normal process by which an airport sponsor notifies the FAA of a proposed construction project is to submit an application (called a "form 7460–1") to its state department of transportation. Third Declaration of James M. Nicely ¶ 8. Once that department has determined that the form 7460–1 is complete, it forwards the form to the FAA for appropriate action. *Id.* ¶ 8. In the instant case, McKinney has submitted to the Texas Department of Transportation seven forms 7460–1 for contemplated projects. Of these seven forms, three were formally transmitted to the FAA and received by the FAA in late January and February 2002; two were submitted to the FAA as a courtesy on February 26, 2002, but have not yet been formally transmitted to the FAA; one has been forwarded to the FAA but is incomplete; and one has reportedly been sent to the FAA but apparently the FAA has not yet been able to confirm receipt. Declaration of James M. Nicely (executed on March 7, 2002) ¶ 8; Third Nicely Dec. ¶¶ 9, 12; FAA's Response to Plaintiff's Rebuttal to Defendant's Notice at 2. Given the very recent receipt of these forms, the FAA has hardly had a reasonable chance to review the various projects proposed by McKinney. At this time, the FAA has not issued any ruling concerning the environmental impacts of the proposed projects nor has it approved the airport expansion that Fairview anticipates. There has thus been no final agency action. *See Bennett v. Spear,* 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (agency action is final if it marks the consummation of the agency's decision-making process and either determines rights or obligations, or has legal consequences); *Independent Petro. Assoc. of Am. v. Babbitt,* 235 F.3d 588, 594 (D.C.Cir.2001) (in determining whether agency action is final, the court should consider whether the agency's position is definitive and whether it has a direct and immediate effect on the day-to-day business of the parties).

Moreover, there is no evidence that the FAA has been recalcitrant in the face of a duty. The FAA has specifically "acknowledge[d] that an environmental assessment would be required before ... an expansion could begin." Defendant's Opposition Memorandum at 9. The FAA also notes that "prior to approval of either a change to the ALP or of federal funding, FAA would be required to address environmental considerations under NEPA, CEQ regulations, and FAA Orders." Defendant's Opposition Memorandum at 24; *see also* Defendant's Response to Plaintiff's Rebuttal to Defendant's Notice at 2 ("In any event, no change to an airport layout plan ... may commence until the appropriate environmental review pursuant to the National Environmental Policy Act ... has been conducted and the ALP change approved."). Thus the FAA agrees with Fairview that no airport construction requiring a change to the ALP can take place until the FAA fulfills its obligations under NEPA. Indeed, when the FAA became aware that some construction had

generally be confined to the courts of appeals. *See* 49 U.S.C. § 46110; *Sutton v. U.S. Dep't of Transportation,* 38 F.3d 621, 625 (2d Cir. 1994) (courts of appeals had exclusive jurisdiction over challenge to FAA's funding for expansion projects); *Nat'l Parks and Conservation Assoc. v. FAA,* 998 F.2d 1523, 1528 (10th Cir.1993) (court of appeals had jurisdiction over FAA determination regarding environmental impact of proposed projects); *City of Alexandria v. FAA,* 728 F.2d 643, 646 (4th Cir.1984) (courts of appeals had exclusive jurisdiction over complaint about FAA's final order to implement flight plan without conducting EIS).

begun at MMA at the beginning of January, the FAA promptly advised McKinney that it may not construct any facility located on airport property without an approved change to the ALP, and instructed MMA to stop construction until a change to the ALP was approved. Declaration of James M. Nicely (executed on February 12, 2002) ¶ 11. The mere fact that the FAA has not yet conducted an environmental review in the short time period since it began receiving the required notices hardly provides a basis for finding that the FAA has been recalcitrant in the face of a duty.

Fairview's claim of a NEPA violation because the FAA has not assessed the cumulative impact of the expansion since McKinney began preliminary activities is not persuasive. Each of the cases cited by Fairview for the proposition that agencies must assess the cumulative impact of related projects involved review of an agency's final determination regarding the environmental impact of the project subsequent to some consideration by the agency of a project's environmental effects. *See City of Grapevine, Texas v. Dep't of Transportation,* 17 F.3d 1502, 1503–04 (D.C.Cir.1994) (reviewing final environmental impact statement by the FAA); *Citizen's Alert Regarding the Environment v. United States Dep't of Justice,* No. 95–1702, 1995 WL 748246, at *1, 5 (D.D.C. December 8, 1995) (reviewing environmental impact statement and environmental assessment); *Airport Impact Relief, Inc. v. Wykle,* 192 F.3d 197, 200–01 (1st Cir.1999) (reviewing decision of agency, based on state's environmental evaluation, not to prepare supplemental environmental impact statement); *Morongo Band of Mission Indians v. FAA,* 161 F.3d 569, 579 (9th Cir.1998) (reviewing conclusion in the FAA's environmental assessment that no EIS was required); *Citizens for Responsible Area Growth v. Adams,* 477 F.Supp. 994, 997, 1003–04 (D.N.H.1979)

(reviewing the FAA's proposed finding, to be issued "imminent[ly]", that no EIS was required). These cases do not support the proposition that a court should intervene *before* a final decision is rendered and *before* an agency has had an opportunity to assess environmental effects of a project during the course of its normal administrative review. The fact that McKinney itself has undertaken certain preliminary activities does not render the FAA delinquent in reviewing potentially related projects described in the applications that the FAA has only recently received.

**C. Ripeness of Fairview's NEPA Claim**

■ The FAA also seeks to dismiss Fairview's NEPA claim on the ground that it is not ripe. Under the ripeness doctrine, "an Article III court cannot entertain the claims of a litigant unless they are 'constitutionally and prudentially ripe.'" *Wyoming Outdoor Council v. U.S. Forest Service,* 165 F.3d 43, 48 (D.C.Cir.1999) (quoting *Louisiana Envtl. Action Network v. Browner,* 87 F.3d 1379, 1381 (D.C.Cir. 1996)). Courts must "go beyond constitutional minima and take into account prudential concerns which in some cases may mandate dismissal even if there is not a constitutional bar to the exercise of ... jurisdiction." *Id.* To this end, a court must examine the "fitness of the issues for judicial review" and the "hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Specifically, courts should consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)

Applying these factors to the instant case, it is clear that Fairview's NEPA claim is not ripe. To begin with, there is insufficient evidence that delayed review would cause hardship to Fairview. Fairview conceded at argument that there is no construction presently taking place at MMA. And although Fairview has identified several construction projects that it expects McKinney to begin shortly, construction on these projects is not imminent. To the contrary, the FAA has specifically instructed McKinney that no further construction may be undertaken without the required approvals to MMA's ALP, and has acknowledged that changes to MMA's ALP will not be approved until environmental considerations have been addressed. There is thus little basis for a claim that environmental harm to Fairview is "certainly impending." *Wyoming Outdoor Council,* 165 F.3d at 48. Moreover, Fairview's right to challenge the expected construction in the future is in no way prejudiced by withholding jurisdiction at the present time. *Ohio Forestry Ass'n,* 523 U.S. at 734, 118 S.Ct. 1665 (no hardship where plaintiff would "have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain").[11]

The second factor also weighs heavily in favor of rejecting Fairview's claims as unripe. Fairview's basic complaint is that the FAA has failed to evaluate the environmental impact of the proposed expansion of MMA. But Fairview has brought this action so prematurely that the FAA has not even had a reasonable opportunity to conduct such an evaluation—which the FAA readily agrees may be required. The Court has no evidence that FAA will fail to apply its expertise in addressing the environmental concerns posed by any proposed MMA expansion. For the Court to intervene at this juncture, especially in the absence of any imminent harm, would constitute an inappropriate interference with the administrative responsibility that has been properly allocated to the FAA. *See Wyoming Outdoor Council,* 165 F.3d at 50 (premature review of NEPA claims denies the agency an opportunity to apply its expertise).

■ It also appears that further factual development would be beneficial to the Court. Although Fairview attempts to couch its allegations in terms of what the FAA has done or has not done thus far, at its core Fairview's concern is that the FAA *will not* timely and fully assess the cumu-

___

11. Although Fairview seems unlikely to incur any hardship with respect to on-the-ground construction, which has stopped, Fairview alleges that it will be subject to certain harms from other sources even while construction is halted: (1) excessive noise due to an alleged increase in jet traffic since January 2002, (2) increased risk of bird strikes due to the alleged increase in jet traffic; and (3) risk of environmental harm due to the existence of a temporary fuel farm that allegedly does not meet EPA standards. *See* Supplemental Declaration of Ronald E. Clary ¶¶ 5–7; Fairview Memorandum in Support of Motion for Preliminary Injunction at 13; Supp. Kalina–Kaminsky Dec. ¶ 25. But with respect to these allegations, as with Fairview's other NEPA allegations, Fairview has identified neither a reviewable agency action under the APA nor a "major federal action" under NEPA. (Of course, to the extent that Fairview's allegations challenge the same agency activities complained of in Fairview's Part 16 proceeding, Fairview's recourse was to take an appeal from that proceeding). In any event, the alleged *present* harms from the alleged increase in jet traffic and the alleged *present* risk from the temporary fuel farm appear to have only a tenuous connection to the planned *future* construction at MMA, which is at the heart of Fairview's complaint. Accordingly, these allegations would be more appropriately addressed through an FAA administrative action than through a NEPA claim focused on anticipated airport expansion activity.

lative environmental impact of MMA's proposed expansion. *See, e.g.,* Complaint ¶¶ 427–30. Judicial intervention in such settings is precisely what the ripeness doctrine is intended to forestall. The role of the federal courts is to address concrete controversies, not to become "entangle[d] ... in abstract disagreements over administrative policies." *Abbott Labs.,* 387 U.S. at 148, 87 S.Ct. 1507; *National Treasury Employees Union v. United States,* 101 F.3d 1423, 1431 (D.C.Cir.1996) ("Prudentially, the ripeness doctrine exists to prevent the courts from wasting our resources by prematurely entangling ourselves in abstract disagreements."). At this point, there is not even an "abstract disagreement[ ] over administrative policies," because the FAA and Fairview agree that MMA should not be permitted to begin its on-the-ground expansion before the FAA has had a chance to review environmental and other concerns. Unless and until Fairview is able to present the Court with a fuller record demonstrating that the FAA has failed to comply with its obligations under NEPA after being given an opportunity to do so, prudence dictates that the Court refrain from hearing the NEPA claims. *See Wyoming Outdoor Council,* 165 F.3d at 50 (NEPA claim unripe where state of factual development in record precluded court from deciding intelligently if defendant had met its NEPA obligations).

 Furthermore, at this time, the factual record does not indicate the existence of a proposed "major federal action" triggering any obligations under NEPA. The FAA has not approved any change to MMA's ALP or even conducted an environmental assessment, much less issued an EIS or a Finding of No Significant Im-

pact. And even though Fairview may expect McKinney to seek reimbursement from the FAA for private funds that McKinney has raised or expended for airport expansion, Fairview does not allege that any reimbursement request has been approved. *See Macht v. Skinner,* 916 F.2d 13, 17 (D.C.Cir.1990) (state's hope that the federal government will fund a project is not sufficient federal involvement to constitute a "major federal action"). In fact, McKinney has not been awarded any federal grants since October 11, 1999, and the FAA represents that no grant, including any for design or construction, will be approved until the FAA addresses environmental considerations under NEPA and relevant CEQ and FAA regulations. *See* Ehly Dec. ¶ 6; Howard Dec. ¶ 6; Nicely Dec. (executed on February 12, 2002) ¶ 9. Although Fairview argues that, according to the Texas Department of Transportation, various federal funds are presently available to MMA (*see* Third Supp. Kalina–Kaminsky Dec. ¶¶ 5–6), the FAA explains that these funds do not represent new grants, but rather grant money contingent upon approval of a proper application or incremental payments under previously awarded grants.[12] *See* FAA's Response to Fairview's Rebuttal to Defendant's Notice at 3; Ehly Dec. ¶¶ 6, 8. Contingent funding, or funding originally awarded for other uses, hardly constitutes a "firm commitment" by the federal government to fund or approve the expansion plans currently on the table. *See Macht,* 916 F.2d at 17 (no "major federal action" where agency's actions did not indicate a "firm commitment" to fund project); *see also Wyoming Outdoor Council,* 165 F.3d at 49 ("the law does not require an agency to prepare an EIS until it reaches the critical stage of a decision which will result

---

12. Certain other categories of funding that Fairview points to are actually provided by the State of Texas or the City of McKinney, not the federal government. Ehly Dec. ¶¶ 9–

15. McKinney's alleged intention to seek reimbursement for some of these funds does not create a "major federal action" at the present time.

in 'irreversible and irretrievable commitments of resources' to an action that will affect the environment" (internal citation omitted)).[13] *See* FAA's Response to Fairview's Rebuttal to Defendant's Notice at 3; Ehly Dec. ¶ 8.

If and when the FAA proposes to act in a manner that does constitute a major federal action within the meaning of NEPA, Fairview is free to "renew [its] claim that an EIS is required … or question the scope of the EIS." *Id.* At this time, however, Fairview's NEPA claim is simply not ripe.[14]

## CONCLUSION

Because Fairview has not exhausted its administrative remedies, and because this Court lacks jurisdiction to hear an appeal from FAA administrative proceedings, Counts Two, Three and Four of Fairview's Complaint must be dismissed. Moreover, with respect to the NEPA claim in Count One of the Complaint, Fairview has not identified a final agency action under the APA and has not presented a case or controversy that is ripe for review; it too must therefore be dismissed. Accordingly, Fairview's motion for a preliminary injunc-

---

**13.** Based upon her review of web-sites and MMA Board minutes, Ms. Kalina–Kaminsky challenges the statements by McKinney's Program Manager, the manager of the Texas Airport Development Office, and the Director of Planning and Programming for Aviation in the Texas Department of Transportation that no federal funds have been granted to MMA since October 1999. *See* Ehly Dec. ¶ 6; Howard Dec. ¶ 6; Nicely Dec. (executed on February 12, 2002) ¶ 9. Specifically, Ms. Kalina–Kaminsky surmises that federal funding for "engineering/design" in FY2002 and for taxiway construction in FY2003 has been approved and is presently available. *See* Third Supp. Kalina–Kaminsky Dec. ¶¶ 5–6; Fourth Supp. Kalina–Kaminsky Dec. ¶¶ 8–9, 11. Ms. Kalina–Kaminsky's assertion, drawn from hearsay, is not sufficient to create an issue of fact concerning the provision of federal funding, especially in the face of the declarations submitted by officials with personal knowledge.

But even if the Court were to credit Ms. Kalina–Kaminsky's statements, the Court would not find jurisdiction over the NEPA claim. First, the alleged use of federal funds for preliminary planning activities related to the proposed expansion does not constitute a "major federal action." *See Macht,* 916 F.2d at 17.

Second, although Fairview acknowledges that under FAA regulations taxiway funding does not ordinarily require an EIS, Fairview argues that an environmental evaluation is required in this case because the taxiway may be converted into a runway and because taxiway development is intertwined with the anticipated construction of hangars. As an initial matter, as described by Fairview, the possibility of taxiway-runway conversion is too speculative to sustain an argument that the FAA has violated NEPA by failing to address the environmental impact of such a project. In any event, the FAA acknowledges that it must address the environmental effects of any new construction prior to its commencement, and the FAA is in the process of reviewing several applications concerning, *inter alia,* building of hangars and taxiways. Thus, despite Fairview's charge that the FAA has been delinquent in complying with NEPA, it would be imprudent for the Court to rule on whether anticipated construction requires an EIS—and which connected actions should fall within the scope of that EIS—while the FAA is in the process of "crystallizing its policy" based on its review of the pending applications. *See Wyoming Outdoor Council,* 165 F.3d at 49 (the primary focus of the "prudential aspect of the ripeness doctrine is to balance 'the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting'") (quoting *Eagle–Picher Indus. v. EPA,* 759 F.2d 905, 915 (D.C.Cir.1985)).

**14.** Although the Court's analysis has focused on the prudential aspect of ripeness, the state of factual development, including the apparent absence of a "major federal action," suggests that Fairview has not suffered an injury under NEPA sufficient to satisfy constitutional standing and ripeness requirements. *See Wyoming Outdoor Council,* 165 F.3d at 48.

tion is denied as moot. In the absence of any viable claim for injunctive relief, Fairview's claim for a declaratory judgment in Count Five of the Complaint is also dismissed.

A separate order has been issued on this date.

### ORDER

Upon consideration of Defendant's Motion to Dismiss and Plaintiff's Motion for a Preliminary Injunction, the submissions of the parties, and the hearing on March 7, 2002, it is hereby

ORDERED that defendant's motion to dismiss be and hereby is GRANTED for the reasons stated in the Court's Memorandum Opinion issued on this date; and it is further

ORDERED that plaintiff's motion for a preliminary injunction be and hereby is DENIED as moot.